UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DYNETIX DESIGN SOLUTIONS INC., a California corporation,<br>            Plaintiff,<br>    v.<br>SYNOPSYS INC., a Delaware corporation, and DOES 1-50,<br>            Defendants. | Case No.: CV 11-05973 PSG<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO SUPPLEMENT ITS INFRINGEMENT CONTENTIONS**<br><br>**(Re: Docket No. 124)** |

In this patent infringement suit, Plaintiff Dynetix Design Solutions Inc. ("Dynetix") moves to amend its infringement contentions. Defendant Synopsys Inc. ("Synopsys") opposes this motion. On November 27, 2012, the parties appeared for hearing. Having reviewed the papers and considered the arguments of counsel, the court DENIES Dynetix's motion.

## I. BACKGROUND

On December 5, 2011, Dynetix filed suit against Synopsys, alleging that its VCS product and its multicore functionalities ("VCS Multicore") and its VCS Cloud product infringe U.S. Patent No. 6,466,898 ("the '898 Patent").[1]

---

[1] *See* Docket No. 1.

1

Case No.: C 11-05973 PSG
ORDER DENYING PLAINTIFF'S MOTION TO AMEND ITS DISCLOSURE OF ASSERTED CLAIMS & INFRINGEMENT CONTENTIONS

1   As required by Patent L.R. 3-1, Dynetix served their infringement contentions on Synopsys
2   on March 20, 2012.[2] The initial infringement contentions named the VCS Cloud as the only
3   infringing instrumentality for claims 19-23 of the '898 Patent (the "Remote Access Claims").[3] The
4   Remote Access Claims cover methods for accessing and using multithreaded simulation tools over
5   a network.[4] According to Dynetix, although it suspected the VCS Multicore also infringes the
6   Remote Access Claims, Dynetix did not believe it could accuse the VCS Multicore in good faith
7   with the information available at the time.[5]

8   To gain more information on VCS Multicore's potential infringement of the Remote Access
9   Claims, Dynetix demanded production of certain VCS Multicore license agreements.[6] Synopsys
10  produced responses to some of Dynetix's Requests for Production ("RFPs"), but did not produce
11  any of VCS Multicore licensing agreements.[7] Synopsys responded that it would produce the
12  responsive documents on a "rolling production" basis.[8] Because of the delay, Dynetix subpoenaed
13  some of Synopsys's major customers for documents related to VCS.[9] On October 5, 2012,
14  Synopsys produced a few license agreements relating to VCS.[10]

15  After reviewing the licensing agreements produced by Synopsys, Dynetix alleged it
16  discovered information which first provided a good faith basis for accusing VCS Multicore as an
17  infringing instrumentality of the Remote Access Claims.[11] Specifically, Dynetix alleges it

---

[2] *See* Docket No. 124, Ex. 1 ¶ 3.

[3] *See id.*

[4] *See* Docket No. 131, Ex. A.

[5] Dynetix did separately accuse VCS Multicore of infringing other claims of the '898 Patent. *See* Docket No. 124, Ex. B.

[6] *See id.*

[7] *See id.* at ¶ 4.

[8] *See id.*

[9] *See id.* at ¶ 5.

[10] *See id.*

[11] *See id.* at ¶ 6.

2

Case No.: C 11-05973 PSG
ORDER DENYING PLAINTIFF'S MOTION TO AMEND ITS DISCLOSURE OF ASSERTED CLAIMS & INFRINGEMENT CONTENTIONS

discovered VCS Multicore allows enterprise licensees to host VCS on a few locations and to access the hosting sites globally through a Wide Area Network ("WAN").[12] Synopsys contests this fact, alleging this information was publicly available on its website since 2009. On October 23, 2012, Dynetix filed this motion seeking leave to amend its infringement contentions to assert the Remote Access Claims against VCS Multicore.[13]

The court held the claim construction hearing on October 10, 2012.[14] The court issued claim construction rulings from the bench.[15] The fact discovery cutoff is April 19, 2013; the expert discovery cutoff is May 31, 2013.[16] Trial is currently set for September 16, 2013.[17]

## II.   LEGAL STANDARDS

Patent Local Rule 3-6 allows the parties to amend their infringement contentions only "by order of the Court upon a timely showing of good cause."[18] The text of the local rule provides a non-exhaustive list of circumstances which, absent prejudice to the non-moving party, may support a finding of good cause: "(a) a claim construction by the Court different from that proposed by the party seeking amendment; (b) recent discovery of material, prior art despite earlier diligent search; and (c) recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions." [19]

The local rules of the Northern District of California require parties to define their theories of infringement early on in the course of litigation.[20] By requiring the non-moving party to show

---

[12] *See* Docket No. 124, Ex. B, D.

[13] *See id.* at ¶ 6.

[14] *See* Docket No. 119.

[15] *See id.*

[16] *See* Docket No. 27.

[17] *See id.*

[18] Pat L.R. 3-6.

[19] *Id.*

[20] *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1359 (Fed. Cir. 2006)

good cause, Local Rule 3-6 serves to balance the parties' rights to develop new information in discovery along with the need for certainty in legal theories at the start of the case.[21]

The good cause inquiry considers first whether "the party seeking leave to amend acted with diligence in promptly when new evidence [was] revealed."[22] The core is the moving party's diligence in investigating the claim and seeking to amend.[23] In considering the party's diligence, the critical question is whether the party "could have discovered [the new information] earlier had it acted with the requisite diligence."[24] The burden is on the moving party to show diligence.[25] The court then considers whether there would be undue prejudice to the non-moving party.[26] If the court finds that the moving party was not diligent in amending its infringement contentions, there is no need to consider the question of prejudice to the non-moving party, although a court in its discretion may elect to do so.[27]

### III. DISCUSSION

#### A. *Dynetix's Diligence in Seeking Leave to Amend*

The party seeking leave to amend must do so as soon as it discovered "nonpublic information… which was not discovered, despite diligent efforts, before the service of the Infringement Contentions."[28] Dynetix alleges it only discovered the nonpublic information through

---

[21] See O2 Micro, 467 F.3d at 1366.

[22] *Id.* at 1363.

[23] *Acer, Inc. v. Tech. Properties Ltd.*, Case No. 5:08-CV-00877 JF/HRL, 2010 WL 3618687 (N.D. Cal. Sept. 10, 2010).

[24] *Google, Inc. v. Netlist, Inc.*, Case No. 08-4144 SBA, 2010 WL 1838693, at *2 (N.D. Cal. May 5, 2010).

[25] *O2 Micro*, 467 F.3d at 1355.

[26] See *Board of Trs. Of Leland Stanford Junior Univ. v. Roche Molecular Sys.*, Case No. 05-04158 MHP, 2008 WL 624771, at *2 (N.D. Cal. 2008).

[27] *See O2 Micro,* 467 F.3d at 1368 (affirming the district court's decision refusing leave to amend upon finding the moving party was not diligent, without considering the question of prejudice to the non-moving party); *see also Leland Stanford Junior Univ.*, 2008 WL 624771, at *3.

[28] Pat. L.R. 3-6.

4
Case No.: C 11-05973 PSG
ORDER DENYING PLAINTIFF'S MOTION TO AMEND ITS DISCLOSURE OF ASSERTED CLAIMS & INFRINGEMENT CONTENTIONS

the October 5, 2012 disclosure of Synopsys' licensing agreements. Dynetix further alleges it was diligent in then moving to amend its infringement contentions on October 23, 2012, eighteen days later.

The present dispute comes down to whether the information Dynetix discovered was actually nonpublic. Synopsys alleges that the fact that it allows licensees to access Synopsys software remotely through a WAN has long been publicly disclosed on Synopsys' website. For example, one document that has been publicly available on Synopsys' website since 2009 explicitly states that "Synopsys provides the optional capability to host on a WAN (this applies to situations where the distance between the client and server is greater than 5 miles)."[29] Another document available on Synopsys' website since 2009, Synopsys' Common Licensing Administration Guide, declares that "Synopsys provides the optional capability to host on a WAN."[30]

Although Dynetix argues it could not rely on these documents because they do not contain any specific information referencing VCS Multicore, this argument holds little weight. Patent L.R. 3-6 considers whether the moving party "could have discovered [the new information] earlier had it acted with the requisite diligence."[31] Although the documents may not exclusively specifically reference VCS Multicore, they plainly apply to general licensing practices of Synopsys which apply to all Synopsys software products. As VCS Multicore is a Synopsys software product, Dynetix had every reason to know that these general licensing guidelines would apply to VCS Multicore. In addition, Dynetix's own complaint attaches certain exhibits that refer to the remote access of VCS Multicore functionality.[32] Either way, Dynetix has not exercised reasonable diligence under Patent L.R. 3-6.

---

[29] Docket No. 131, Ex. D.

[30] Docket No. 131, Ex. E at 2-5.

[31] *Google, Inc. v. Netlist, Inc.*, Case No. 08-4144 SBA, 2010 WL 1838693, at *2 (N.D. Cal. May 5, 2010).

[32] *See* Docket No. 1, Ex. A ("Designers now use farm-based parallelism to address the bandwidth bottleneck for regression suites"); Ex. G ("VCS Multicore technology is the latest performance

### B. *Prejudice to Synopsys*

As the court has concluded that Dynetix failed to meet its burden of showing diligence, the court need not consider the second question of prejudice to Synopsys.[33] Nevertheless, in the interest of completeness, the court will in its discretion address whether Synopsys will suffer prejudice from this amendment.

Synopsys asserts it will be prejudiced because the proposed amendment was made after the completion of claim construction and would expand the case substantially. Claim construction is limited to the ten terms the parties deem to be "most significant to the resolution of the case."[34] Had Synopsys known VCS Multicore stood accused of infringing the Remote Access Claims at the time of claim construction, Synopsys would have requested the court include in construed terms additional terms in the Remote Access Claims relevant to Dynetix's new infringement theory.[35]

Another relevant consideration is whether Dynetix's motion to amend was motivated by gamesmanship.[36] Dynetix never mentioned its intention to accuse VCS Multicore of infringing the Remote Access Claims during the claim construction hearing on October 10.[37] By that time, Dynetix had already received the licensing agreements from Synopsys, which would have confirmed their alleged suspicions about the VCS Multicore's infringement of the Remote Access Claims. But Dynetix never raised the issue. Instead, Dynetix informed Synopsys of their intention to seek leave to amend on October 17, 2012 – on the same day that Synopsys informed Dynetix it

---

optimization innovation in VCS. It enables parallel verification of a design and its verification environment on multicore computer *servers*… For example, on a quad-core computer *server*…") (emphasis added); Ex. H (2008 white paper describing the use of VCS on "compute farms").

[33] *See O2 Micro,* 467 F.3d at 1368.

[34] Patent L.R. 4-3.

[35] Dynetix did not include its proposed amendments to its infringement contentions with its motion and thus still has not fully disclosed their theory of infringement regarding VCS Multicore's infringement of the Remote Access Claims.

[36] *See Acco Brands, Inc. v. PC Guardian Anti-Theft Products, Inc.*, Case No. 04-03526 SI, 2008 WL 2168379, at *1 (N.D. Cal. May 22, 2008).

[37] *See* Docket No. 121.

6
Case No.: C 11-05973 PSG
ORDER DENYING PLAINTIFF'S MOTION TO AMEND ITS DISCLOSURE OF ASSERTED CLAIMS & INFRINGEMENT CONTENTIONS

intended to move for summary judgment.[38] This suggests to Synopsys that Dynetix was motivated by gamesmanship and a desire to employ a "shifting sands" approach to claim construction, which would prejudice Synopsys in bringing their motion for summary judgment.[39]

While the court is not prepared to label Dynetix's actions as motivated by gamesmanship, it does agree with Synopsys that the prejudice it faces from the proposed amendment is real. Claim construction in this case has been completed. Discovery is proceeding apace. Like all patent cases, this case must narrow as it moves forward, not expand. Because the proposed amendment would leave Synopsys prejudiced by its previous claim term choices, even if prejudice were necessary to consider in evaluating Dynetix's request, the prejudice here requires that the request by Dynetix be denied.

**IT IS SO ORDERED.**

Dated: December 3, 2012

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[38] *See* Docket No. 131, Ex. B, C.

[39] *LG Electronics Inc. v. Q-Lity Computer Inc.*, 211 F.R.D. 360, 367 (N.D. Cal. 2002).

7
Case No.: C 11-05973 PSG
ORDER DENYING PLAINTIFF'S MOTION TO AMEND ITS DISCLOSURE OF ASSERTED CLAIMS & INFRINGEMENT CONTENTIONS