UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DYNETIX DESIGN SOLUTIONS INC., A California corporation, </br></br>          Plaintiff,</br>      v.</br></br>SYNOPSYS INC., a Delaware corporation, and DOES 1-50</br></br>          Defendants. | Case No.: 11-CV-05973 PSG</br></br>**ORDER GRANTING-IN-PART DYNETIX'S FIRST MOTION TO COMPEL**</br></br>**(Re: Docket No. 176)** |

In this patent infringement suit, Plaintiff Dynetix Design Solutions Inc. ("Dynetix") seeks an order compelling Defendant Synopsys Inc. ("Synopsys") to produce designs and test data relating to the accused VCS product, as well as the VCS software license keys and other enabling devices, to allow Dynetix to test VCS itself.[1] Synopsys opposes. Both parties filed supplemental briefing on this matter. On January 25, 2013, the court took the matter under submission. Having considered the arguments of counsel, Dynetix's motion to compel is GRANTED-IN-PART.

---

[1] *See* Docket No. 176.

1

Case No.: 11-CV-05973 PSG
**ORDER GRANTING-IN-PART DYNETIX'S FIRST MOTION TO COMPEL**

## I.     BACKGROUND

On December 5, 2011, Dynetix filed this suit against Synopsys, alleging that VCS infringes a number of claims of U.S. Patent No. 6,466,898 ("the '898 Patent").[2] Various '898 Patent claims require that a logic simulator achieve "linear to super-linear scalable performance speedup" when it is run in parallel or multicore mode.[3] Dynetix asserts that one way to resolve whether VCS practices this limitation is by examining certain performance test documents, including designs and test data, and by Dynetix running its own tests using the executable code.[4]

To this end, Dynetix served a request on Synopsys for "documents and things relating to the design, research, development, and release of the Multicore functionality of VCS," including design documents, communications, meeting minutes, budgets and expenditures, projections, roadmaps, test results, simulation results, and source codes.[5] Dynetix also requested that Synopsys supply all necessary enabling devices such as software license keys, so that it could run its own tests.

After the parties met and conferred, they agreed that Synopsys would produce executable code and test cases on a disk. Unfortunately, after Synopsys provided the disk, Dynetix's expert was unable to install the executable files and asserted that license keys and installers were required. Synopsys initially refused, but offered Dynetix an alternative – a Dynetix expert could test the executable code in Synopsys's Secure User Research Facility. This time Dynetix refused, and moved on December 21, 2012, to compel production of (1) test results and design documents

---

[2] *See* Docket No. 1.

[3] *See* Docket No. 213 at 2.

[4] *See* Docket No. 176 at 2.

[5] *See* Docket No. 176, Ex. 1.

2
Case No.: 11-CV-05973 PSG
**ORDER GRANTING-IN-PART DYNETIX'S FIRST MOTION TO COMPEL**

related to testing of VCS Multicore and (2) all enabling devices, including license keys, necessary to allow Dynetix to test VCS at its own facility.

After the motion was filed, Synopsys offered to supply temporary license keys that would work until February 8, 2013. Dynetix accepted this offer, but determined that it needed to purchase new hardware on which to run the executables and give the new hardware Host I.D. to Synopsys for the creation of the license keys.  After Dynetix provided Synopsys with the Host I.D., Synopsys provided 32 license keys for VCS that would be operational only until February 8th.  When Synopsys requested that Dynetix withdraw the portion of the motion to compel related to enabling devices, including license keys, Dynetix refused, because the license keys were temporary, and the executable files were still not operational.

## II.   LEGAL STANDARD

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.[6] Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.[7] The court must limit the frequency or extent of discovery if it is unreasonably cumulative or duplicative or can be obtained from another source that is more convenient, or the burden or expense of the proposed discovery outweighs its likely benefit.[8]

## III.   DISCUSSION

As a preliminary procedural matter, Dynetix argues for the first time in its reply brief that Synopsys has waived its right to object to the requests at issue, because it failed to provide specific,

---

[6] *See* Fed. R. Civ. P. 26.

[7] *See id.*

[8] *See id.*

3
Case No.: 11-CV-05973 PSG
**ORDER GRANTING-IN-PART DYNETIX'S FIRST MOTION TO COMPEL**

non-boilerplate objections within 30 days of the request.[9] The irony of Dynetix's complaint is not lost on this court. Generally, "[i]t is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers" and such arguments are deemed waived.[10] On that basis alone, the court could refuse to consider Dynetix's argument. Further, the court notes that Dynetix cites no authority supporting its contention that boilerplate objections as a rule *must* be waived. To the contrary, multiple district courts have held that while "boilerplate" objections made within the 30-day time limit are insufficient, detailed objections provided outside the 30-day time limit may cure the insufficiency under certain circumstances.[11] In any event, because Synopsys has since provided additional information supporting its initial objections, the court in its discretion will consider Synopsys' arguments as to the overbreadth of Dynetix's request.

### A. Simulation Results and Data

Dynetix requests two categories of test documents: (1) those from original simulation tests, which were run on an ad hoc basis earlier in VCS's development; and (2) logs of simulation tests run nightly by an automated system since 2010. Dynetix claims that each simulation test has a runtime log stored with the test design that contains the simulation time, a key performance measurement.[12] Dynetix argues the data is also relevant to other issues of infringement, such as whether designs of different HDL's are compiled into the same database and whether

---

[9] *See* Docket No. 228 at 4.

[10] *Dytch v. Yoon*, Case No. 10-02915-MEJ, 2011 WL 839421, at *3 (N.D. Cal. Mar. 7, 2011) (citation omitted). *See also Bazuaye v. INS*, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived.").

[11] *See, e.g. Best Buy Stores L.P. v. Manteca Lifestyle Center*, LLC, Case No. 10-0389-WBS-KJN, 2011 WL 2433655 (E.D. Cal. June 14, 2011); *Superior Communications v. Earhugger, Inc.*, 257 F.R.D. 215, 219-20 (C.D. Cal. 2009).

[12] *See* Docket No. 176 at 4-5.

4
Case No.: 11-CV-05973 PSG
**ORDER GRANTING-IN-PART DYNETIX'S FIRST MOTION TO COMPEL**

autopartitioning was used during the compile stage, which it claims is relevant to the auto-detection element of the '898 Patent.[13]

While certain information sought by Dynetix may be relevant to its claims of super-linear scalability, the court agrees with Synopsys that the request is overly broad in that it sweeps hundreds of thousands of tests run nightly by Synopsys that appear to do little more than provide automated message information on whether the code ran more slowly than the night before. Whatever relevance these documents might have is far outweighed by the burden placed on Synopsys. Because Synopsys runs approximately 3,000 simulations every night, the request would require documents from nearly four million simulations over the past four years.[14] Additionally, the majority of these tests are done on customer designs, which disclose highly confidential information of Synopsys's clients that are governed by strict Non-Disclosure Agreements.[15] Discovery of these documents would require Synopsys to sort every simulation design and contact every customer to request permission to share the document.

In order to provide Dynetix with possibly relevant information and to avoid undue burden on Synopsys, the court finds the appropriate balance may be struck as follows: Synopsys shall provide all test documents, including test data, designs, logs, and results, for tests run either nightly or on an ad hoc basis using Synopsys "sample" or "toy" designs as referenced in the deposition of Synopsys employee Usha Gaira.[16] These documents do not involve customers' confidential information. No other test documents need be produced.

---

[13] *See* Docket No. 228 at 3.

[14] *See* Docket No. 214 at 2.

[15] *See id.*

[16] *See* Docket No. 228, Exhibit B at 2.

5

Case No.: 11-CV-05973 PSG
**ORDER GRANTING-IN-PART DYNETIX'S FIRST MOTION TO COMPEL**

### B. Enabling Devices, Including License Keys

Dynetix argues it needs to test the executable code for VCS itself for performance scalability. Synopsys produced the executable code for a limited period, but that limited period expired and Dynetix was not able to functionally use the code. Dynetix argues that it needs all enabling devices such as installers and license keys to run the executable code properly.

The court agrees with Dynetix. The results of this testing do appear relevant to Dynetix's theory of infringement, and Dynetix has the right to test the executable code in its own facilities. Synopsys shall produce any necessary license keys, installers, or passcodes, or the like required to allow Dynetix to test VCS on its own system, up until the conclusion of expert discovery.

### IV.   CONCLUSION

No later than March 15, 2013, Synopsys shall produce (1) test results and documents for the "sample" or "toy" designs referenced in the Gaira deposition, and (2) any license keys, codes, and installers required to run the VCS executable code.  All other relief requested is denied.

**IT IS SO ORDERED.**

Dated: February 28, 2013

_____
PAUL S. GREWAL
United States Magistrate Judge

6

Case No.: 11-CV-05973 PSG
**ORDER GRANTING-IN-PART DYNETIX'S FIRST MOTION TO COMPEL**