UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DYNETIX DESIGN SOLUTIONS INC., A California corporation, <br><br> Plaintiff, <br> v. <br><br> SYNOPSYS INC., a Delaware corporation, and DOES 1-50 <br><br> Defendants. | Case No.: 11-CV-05973 PSG <br><br> **ORDER GRANTING DYNETIX'S SECOND MOTION TO COMPEL** <br><br> **(Re: Docket No. 235)** |

In this patent infringement suit, Plaintiff Dynetix Design Solutions Inc. ("Dynetix") moves to compel Defendant Synopsys Inc. ("Synopsys") to produce certain design specifications, the folder structure for documents already produced, and version control information.[1]  Synopsys opposes.[2]  On February 26, 2013, the parties appeared for hearing.  Having reviewed the papers and considered the arguments of counsel, the court GRANTS-IN-PART Dynetix's motion.

---

[1] *See* Docket No. 235.

[2] *See* Docket No. 246.

1

Case No.: 11-CV-05973 PSG
ORDER GRANTING-IN-PART DYNETIX'S SECOND MOTION TO COMPEL

## I.   BACKGROUND

On December 5, 2011, Dynetix filed suit against Synopsys, alleging VCS Multicore infringes a number of claims of U.S. Patent No. 6,466,898 ("the '898 patent"").[3] Synopsys counterclaimed, alleging infringement of U.S. Patent No. 5,784,593 ("the '593 patent") and U.S. Patent No. 5,706,473 ("the '473 patent").[4]

During the course of this litigation, several discovery disputes have arisen regarding Dynetix's suit against Synopsys. The discovery disputes that are the subject of the instant motion are outlined below.

### 1.   Development Specifications

Dynetix first requested all documents related to "the design, research, development, and release" of VCS Multicore, VCS MX, and VCS Cloud.[5] In deposing two Synopsys employees, Pallab Dasgupta ("Dasgupta") and Jatinder Goraya ("Goraya"), Dynetix learned that development specifications that may have existed for all three projects.[6] Dasgupta testified specifically that "any project would have some specifications," and listed requirement specifications, design specifications, and implementation specifications.[7] Goraya also testified that he had seen requirement specifications for VCS Multicore, but did not remember seeing any design specifications.[8] On August 3, 2012, Synopsys produced a large set of technical documents which included VCS Multicore specifications.[9] On December 13, 2012, Dynetix informed Synopsys it

---

[3] *See* Docket No. 1.

[4] *See* Docket No. 58.

[5] *See* Docket No. 235 at 2.

[6] *See* Docket No. 235-1, Ex. A; Docket No. 235-1 Ex. D.

[7] *See* Docket No. 235-1, Ex. A.

[8] S*ee* Docket No. 235-1 Ex. D.

[9] *See* Docket No. 249, Ex. D-O.

2
Case No.: 11-CV-05973 PSG
ORDER GRANTING-IN-PART DYNETIX'S SECOND MOTION TO COMPEL

did not believe the production contained any technical specifications.[10]  Synopsys then identified some of the produced specifications by Bates number,[11] but Dynetix maintains that no technical specifications had been produced.[12]

### 2. Wiki Page Folder Structure

Dynetix requested documents from Synopsys's Multicore Wiki page, a server location where the multicore team members share the project-related documents (the "Multicore Wiki").[13]  Although Synopsys conceded the relevancy of these documents and provided them to Dynetix,[14] Dynetix insists these documents be produced together with folder structure information.

### 3. Version Control Information for Source Code

Synopsys uses a source code repository to store the VCS source code and log any changes made to the source code.[15]  Synopsys produced the source code for each release of VCS Multicore, but without version control information.[16]  Dynetix objected, insisting the version control information is necessary.  The parties subsequently conferred via telephone but could not come to an agreement.

## II.   LEGAL STANDARDS

Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense.[17]  At the discovery stage, information is relevant if it appears reasonably

---

[10] *See* Docket No. 249, Ex. P; *see* Docket No. 235-1, Ex. H.

[11] *See* Docket No. 249, Ex. Q.

[12] *See* Docket No. 249, Ex. S.

[13] *See* Docket No. 235-1, Ex. A.

[14] *See id.* at ¶ 2.

[15] *See* Docket No. 235-1, Ex. F.

[16] *See* Docket No. 249 ¶ 6.

[17] *See* Fed. R. Civ. P. 26.

3
Case No.: 11-CV-05973 PSG
ORDER GRANTING-IN-PART DYNETIX'S SECOND MOTION TO COMPEL

calculated to lead to the discovery of admissible evidence.[18]  The court must limit the frequency or extent of discovery if it is unreasonably cumulative or duplicative, it can be obtained from another more convenient source, or the burden or expense of the proposed discovery outweighs its likely benefit.[19]  Additionally, "the court may order discovery of any matter relevant to the subject matter involved in the action" upon a showing of good cause.[20]

Regarding electronically stored information, a party need not provide discovery from sources that the party identifies as not reasonably accessible because of undue burden or cost.[21]  The party from whom discovery is sought bears the burden of showing undue burden or cost.[22]  If the party seeking discovery shows good cause, the court may nonetheless choose to order discovery.[23]

### III.   DISCUSSION

**1. Development Specifications**

Dynetix asks the Court to compel Synopsys to produce development specifications for all three projects, or to certify under oath that to the best of its knowledge, no additional development specifications have been found after a diligent search and they have not been intentionally deleted or otherwise destroyed.  Dynetix believes additional specifications exist, but have not been produced, and claims that the depositions of Dasgupta and others show that Synopsys might have

---

[18] *See* Fed. R. Civ. P. 26.

[19] *See id.*

[20] *See id.*

[21] Fed. R. Civ. P. 26(b)(2)(B)

[22] *See id.*

[23] *See id.*

4
Case No.: 11-CV-05973 PSG
ORDER GRANTING-IN-PART DYNETIX'S SECOND MOTION TO COMPEL

destroyed or concealed them.  Synopsys argues that not every project has design specifications and it has already produced all development specifications in its possession.

There is no question that development specifications for all three projects are highly relevant.  Further, Dynetix has provided substantial information suggesting that Synopsys' production may be incomplete.[24]  As a result, the court finds it appropriate to compel Synopsys to produce any outstanding specifications for VCS Multicore, VCS MX, and VCS Cloud.  If Synopsys finds no additional documents exist after conducting a reasonable search, it shall simply amend its response to Dynetix's request to say as much, consistent with Fed. R. Civ. P. 34(b)(2) and 11(a).

### 2. Wiki Page Folder Structure

Dynetix moves to compel Synopsys to produce all of the original folder structure of the Multicore Wiki page, arguing the already-provided Wiki page should have been produced as they are kept "in the usual course of business."[25]  Synopsys disagrees, contending information of the folder structure is metadata under the parties' stipulated e-discovery order and Dynetix has not shown good cause to order production.[26]

Even if this information constitutes metadata, Dynetix has shown good cause to require Synopsys to produce the organizational structure.  As noted above, Dynetix has provided evidence suggesting there are additional specifications not yet produced.  The Wiki page folder structure may serve to identify any missing production.  Synopsys has not alleged that production of the folder structure would be overly burdensome or protected under privilege.  Indeed, Synopsys

---

[24] For example, Dynetix points to a produced document which appears to show that as of 2010, Synopsys had already provided technical specifications of VCS Cloud to some customers for review.  *See* Docket No. 250, Ex. B.

[25] *See id.* (quoting Fed. R. Civ. P. 34(b)(2)(E)(i)).

[26] *See* Docket No. 28 at 2.

represents that it has already provided the entire contents of the Multicore Wiki page, so the court is hard-pressed to find any issues of privilege or secrecy.

### 3. Version Control Information for Source Code

Dynetix further moves to compel Synopsys to produce the version control information for all of the previously provided source code. Dynetix argues the information is relevant to rebutting the testimony of Synopsys' expert, Mr. Dasgupta, regarding the hMatis autopartitioning code. It also states that the revision history is relevant to the issue of willful infringement – it may verify Synopsys's denial of the existence of the Multicore project in June 2006.

Synopsys offers little to counter Dynetix's arguments of relevancy, except to argue that some of the information sought by Dynetix might be available from the original source code. Instead, Synopsys emphasizes that production of the version control information in compliance with the source code provisions of the protective order would require numerous man-hours.[27] Moreover, Synopsys has identified a less burdensome means for Dynetix to access this information – through a verified interrogatory response. In light of the burden demonstrated by Synopsys from producing the requested version control information, the court finds that a verified interrogatory response offers a more reasonable alternative for verifying Synopsys' claims regarding autopartitioning and willful infringement. Dynetix may propound an interrogatory on the questions of when and by whom certain changes to the source code were made.

### IV. CONCLUSION

No later than March 29, 2013, Synopsys shall conduct a reasonable and diligent search and produce any outstanding specifications relating to the "the design, research, development, and release" of VCS Multicore, VCS MX, and VCS Cloud. If no specifications are outstanding, Synopsys shall amend its response to certify that after a reasonable and diligent search, all specifications have been produced. By this same date, Synopsys shall produce the Multicore Wiki

---

[27] *See* Docket No. 247.

6
Case No.: 11-CV-05973 PSG
ORDER GRANTING-IN-PART DYNETIX'S SECOND MOTION TO COMPEL

page with its original folder structure, and respond to any interrogatory on source code changes served by Dynetix no later than March 22, 2013.  All other requested relief is denied.

**IT IS SO ORDERED.**

Dated:  March 7, 2013

                                 _____
                                 PAUL S. GREWAL
                                 United States Magistrate Judge