CHRIS R. OTTENWELLER (STATE BAR NO. 73649)
cottenweller@orrick.com
I. NEEL CHATTERJEE (STATE BAR NO. 173985)
nchatterjee@orrick.com
JASON K. YU (STATE BAR NO. 274215)
jasonyu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, California 94025
Telephone: +1-650-614-7400
Facsimile: +1-650-614-7401

BENJAMIN J. HOFILEÑA (STATE BAR NO. 227117)
bhofilena@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street Suite 3200
Los Angeles, CA 90017
Telephone: +1-213-629-2020
Facsimile: +1-213-612-2499

Attorneys for Defendant and Counterclaimant
SYNOPSYS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DYNETIX DESIGN SOLUTIONS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SYNOPSYS, INC., a Delaware corporation, and DOES 1-50,<br><br>Defendant. | Case No. 5:11-cv-05973-PSG<br><br>**DEFENDANT SYNOPSYS, INC.'S NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER TO PRECLUDE THE DEPOSITION OF MANOJ GANDHI**<br><br>Date: May 7, 2013<br>Time: 10:00 a.m.<br>Court: 5<br>Judge: Honorable Paul S. Grewal |
| SYNOPSYS, INC., a Delaware corporation,<br><br>Counterclaim Plaintiff,<br><br>v.<br><br>DYNETIX DESIGN SOLUTIONS, INC., a California corporation,<br><br>Counterclaim Defendant. | |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on May 7, 2013, at 10:00 a.m., or as soon as the matter may be heard thereafter, in the San Jose Courthouse, 280 South 1st Street, San Jose, California 95113, Floor 4, Courtroom 5, before the Honorable Paul S. Grewal, Defendant Synopsys, Inc. ("Synopsys") will move pursuant to Federal Rule of Civil Procedure 26(c)(1) for a protective order to preclude Plaintiff Dynetix Design Solutions, Inc. ("Dynetix") from taking the deposition of Manoj Gandhi, Synopsys's Senior Vice President and General Manager, Verification Group.

This motion is supported by the attached Memorandum of Points and Authorities, the Declaration of Jason K. Yu, the Declaration of Manoj Gandhi, all pleadings and papers which are of record and are on file in this case, and on such other oral and documentary evidence as may be presented at the hearing of this motion.

Dated: April 2, 2013

Respectfully submitted,

CHRIS R. OTTENWELLER
I. NEEL CHATTERJEE
BENJAMIN J. HOFILEÑA
JASON K. YU
Orrick, Herrington & Sutcliffe LLP

By: /s/ *Chris R. Ottenweller*
CHRIS R. OTTENWELLER
Attorneys for Defendant
SYNOPSYS, INC.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 26(c)(1), Synopsys moves the Court for an order preventing Dynetix from taking the deposition of Manoj Gandhi. Mr. Gandhi—Synopsys's Senior Vice President and General Manager, Verification Group—is a high-level executive at Synopsys who has little to no unique first-hand, non-repetitive knowledge of the facts at issue in this case. As detailed further below, Mr. Gandhi in fact has no knowledge relating to Dynetix, the '898 patent, or Dynetix's allegations of patent infringement. Dynetix nevertheless alleges it should be allowed to take Mr. Gandhi's deposition because he has information relevant to the issues of willfulness and damages. Because of Mr. Gandhi's senior position at Synopsys (he reports directly to Synopsys's President and co-Chief Executive Officer), however, there is "a tremendous potential for abuse or harassment" if Dynetix is permitted to depose Mr. Gandhi without limitation. *Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. C 05-4374 MMC (JL), 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007).

Given this potential for abuse or harassment, under the "apex" doctrine, Dynetix is not entitled to Mr. Gandhi's deposition unless the Court finds that (1) Mr. Gandhi has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) Dynetix has exhausted all other less intrusive discovery methods, such as interrogatories and depositions of lower-level employees. *See Apple Inc. v. Samsung Elecs. Co., Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012). Because Dynetix cannot identify any unique non-cumulative knowledge that Mr. Gandhi has relating to willfulness and damages, and because Dynetix has not exhausted other less intrusive discovery methods available to it, the Court should grant Synopsys's motion for a protective order and preclude Dynetix from taking Mr. Gandhi's deposition.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(c)(1), the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by forbidding or limiting the time and scope of a deposition. Fed. R. Civ. P. 26(c)(1); *see also Apple*, 282 F.R.D. at 262. "Virtually every court that has addressed

deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment." *Celerity*, 2007 WL 205067, at *3. "The court therefore has discretion to limit discovery where the discovery sought 'can be obtained from some other source that is more convenient, less burdensome, or less expensive.'" *Apple*, 282 F.R.D. at 263 (quoting Fed. R. Civ. P. 26(b)(2)(C)(i)).

In determining whether a high-level witness's deposition should be precluded under the apex doctrine, courts traditionally consider two factors: "(1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Id.* (quoting *In re Google Litig.*, No. C 08-03172 RMW (PSG), 2011 WL 4985279, at *2 (N.D. Cal. Oct. 19, 2011)). In addition to this two-factor test, this Court has also considered, in the context of large multi-national corporations, how high the witness is in the corporate structure. *Id.* In particular, "the closer that a proposed witness is to the apex of some particular peak in the corporate mountain range, and the less directly relevant that person is to the evidence proffered in support of his deposition, the more appropriate the protections of the apex doctrine become." *Id.*

## III. ARGUMENT

### A. Mr. Gandhi's Position At Synopsys Warrants Protection Under The Apex Doctrine.

As a threshold matter, the Court should find that Mr. Gandhi is entitled to the protections afforded to an "apex" witness. As Synopsys's Senior Vice President and General Manager of the Verification Group, Mr. Gandhi reports directly to Dr. Chi Foon Chan, the President and co-Chief Executive Officer of Synopsys, and oversees 1,033 employees in the Verification Group. *See* Declaration of Manoj Gandhi in Support of Defendant Synopsys, Inc.'s Motion for a Protective Order to Preclude the Deposition of Manoj Gandhi ("Gandhi Decl."), ¶ 2; *see also* Declaration of Jason Yu in Support of Defendant Synopsys, Inc.'s Motion for a Protective Order to Preclude the Deposition of Manoj Gandhi ("Yu Decl."), Ex. A (Synopsys website identifying Management Team). Moreover, in his capacity as Senior Vice President, Mr. Gandhi is a "high-level decision

maker removed from the daily subjects of the litigation." *Celerity*, 2007 WL 205067, at *3 (internal quotations omitted). In fact, Mr. Gandhi has had no involvement in this litigation (aside from submitting a declaration for the instant motion). *See* Gandhi Decl., ¶ 6. At least one other court in this District has recognized Senior Vice Presidents as apex witnesses and precluded the taking of their depositions under the apex doctrine. *See Groupion, LLC v. Groupon, Inc.*, No. 11-0870 MEJ, 2012 WL 359699, at *4 (N.D. Cal. Feb. 2, 2012) (denying apex depositions of six high-level executives, including four Senior Vice Presidents).

### B. Mr. Gandhi Has No First-Hand, Non-Repetitive Knowledge Relating To Facts At Issue In This Case.

In determining whether to allow the deposition of Mr. Gandhi, the Court must first consider whether Mr. Gandhi "has unique first-hand, non-repetitive knowledge of the facts at issue in the case." *Apple*, 282 F.R.D. at 263. Regarding the issue of willfulness, Synopsys previously propounded an interrogatory to Dynetix seeking an identification of all facts supporting Dynetix's willfulness allegations. Dynetix provided only the following response:

> Dynetix knew that it requested Synopsys in 2006 to license the '898 patent, but was told that Synopsys was not planning to develop multithreaded VCS. Three years later, according to Synopsys' own admission, Synopsys' multicore VCS started to generate revenues.

Yu Decl., Ex. B (Dynetix's Responses to Synopsys's Interrogatory No. 5). The 2006 request for Synopsys to license the '898 patent came in the form of a May 25, 2006 letter from Edward Goldstein, Dynetix's counsel, addressed to Mr. Gandhi's attention. *See id.*, Ex. C. Synopsys's outside counsel responded to that letter on June 19, 2006. *See id.*, Ex. D (letter from Synopsys).

Mr. Gandhi, however, has no recollection of receiving Mr. Goldstein's letter, had no part in preparing the June 19, 2006 response to Mr. Goldstein's letter, and has had no involvement in this lawsuit. *See* Gandhi Decl., ¶¶ 3-6. Assuming Mr. Gandhi even saw the May 25, 2006 letter, it is and was his normal practice to send such licensing and litigation demand letters to Synopsys's in-house legal department. *See id.*, ¶ 4. Mr. Gandhi therefore has no unique first-hand, non-repetitive knowledge of the facts related to Dynetix's allegations of willfulness in this case. Indeed, despite inquiries from Synopsys during the parties' meet and confer discussions,

Dynetix has never identified with specificity any first-hand, non-cumulative knowledge Mr. Gandhi has that would justify allowing Dynetix to take his deposition. *See* Yu Decl., Ex. E (March 25, 2013 email from Dynetix). Because it appears that Dynetix's sole basis for noticing Mr. Gandhi's deposition is the May 25, 2006 letter, Synopsys is willing to stipulate to the authenticity of the May 25, 2006 and June 19, 2006 letters exchanged between the parties' outside counsel and to the fact that Synopsys received and responded to the May 25, 2006 letter from Dynetix's outside counsel. With such a stipulation, a deposition of Mr. Gandhi on facts relating to willfulness would be a waste of his time and the parties' time.

Mr. Gandhi's deposition should also be precluded because he does not have any unique first-hand, non-repetitive knowledge of the facts related to damages in this case. Dynetix contends that Mr. Gandhi's deposition is necessary because he "has the intimate knowledge of the financial performance of VG [Verification Group], down to products." Yu Decl., Ex. E (March 25, 2013 email from Dynetix). Even assuming Dynetix's contention is true, Mr. Gandhi's knowledge is duplicative and cumulative of the knowledge of lower-level Synopsys employees that report to Mr. Gandhi. While Mr. Gandhi does in fact see Synopsys financial information as it relates to VCS and the Verification Group, that information is compiled and provided to him by other employees that work under him. *See* Gandhi Decl., ¶ 7. Moreover, much of the financial information provided to Mr. Gandhi is at a very highly level, and Mr. Gandhi will rarely, if ever, see the purchase orders and other financial documents underlying Synopsys's revenue and sales figures. *See id.* Not surprisingly, Dynetix has not identified any particular information relating to damages that is uniquely within Mr. Gandhi's possession. Dynetix therefore should not be allowed to depose Mr. Gandhi on damages. *See Affinity Labs of Texas v. Apple, Inc.*, No. C 09-4436 CW JL, 2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011) ("[m]ost importantly, Affinity's Motion fails to identify any additional information it needs from Mr. Jobs that it has not already learned from the depositions of Apple witnesses").

**C. <u>Dynetix Has Not Exhausted Other Less Intrusive Discovery Methods.</u>**

The other factor for the Court to consider in determining whether to allow the deposition of Mr. Gandhi is whether Dynetix has exhausted other less intrusive discovery methods. *Apple*,

282 F.R.D. at 263. "Where a high-level decision maker removed from the daily subjects of the litigation has no unique personal knowledge of the facts at issue, a deposition of the official is improper." *Celerity*, 2007 WL 205067 at *3 (internal quotations and citations omitted). "This is especially so where the information sought in the deposition can be obtained through less intrusive discovery methods (such as interrogatories) or from depositions of lower-level employees with more direct knowledge of the facts at issue." *Id.* (citation omitted).

Although Mr. Gandhi's lack of first-hand, non-repetitive knowledge alone justifies granting Synopsys's motion for a protective order, Dynetix's failure to exhaust other less intrusive discovery methods also warrants precluding Mr. Gandhi's deposition. Regarding willfulness, Synopsys has already agreed to provide the deposition testimony of Sridhar Seshadri, a Group Director at Synopsys, as its 30(b)(6) testimony on the willfulness topics in Dynetix's 30(b)(6) deposition notice, including:

> 13. Your knowledge of Dynetix and its products.
>
> 14. Your knowledge of the '898 patent.
>
> 15. Your decision to develop VCS Cloud and VCS Multicore without licensing the '898 patent, including, if applicable, the opinions of counsel regarding design around freedom to operate, non-infringement, and/or invalidity.

Yu Decl., Ex. F (Plaintiff's Second Notice of Deposition). Mr. Seshadri's deposition is currently scheduled for April 19, 2013. Since Dynetix has not yet taken Mr. Seshadri's deposition, Dynetix cannot in good faith argue that it has exhausted other less intrusive discovery methods before seeking Mr. Gandhi's deposition. *See Celerity*, 2007 WL 205067 at *3 (identifying "depositions of lower-level employees with more direct knowledge of the facts at issue" as less intrusive discovery method); *see also Groupion, LLC v. Groupon, Inc.*, No. 11-0870 MEJ, 2012 WL 359699, at *4 (N.D. Cal. Feb. 2, 2012) (denying apex depositions where "[m]ore than likely, other employees and non-employees" would have relevant information).

Dynetix also cannot establish that it has exhausted other less intrusive discovery methods in seeking information on the issue of damages. Most importantly, Synopsys has agreed to provide a 30(b)(6) witness on April 5, 2013 for numerous topics that would cover all relevant

damages issues in this case. For example, subject to Synopsys's objections, the 30(b)(6) witness will provide testimony on the following broad topics:

> 3. The development of VCS Multicore, including the history, budgets, expenses, and Human Resources for the development.
>
> 9. The license or sale of VCS to [certain Synopsys customers who may have used the VCS Multicore features]
>
> 11. The cost of human resources, direct and indirect expenses, and other costs relating to the development of VCS in general and VCS Multicore, VCS MX, and VCS Cloud in particular.
>
> 12. The revenues, profits, expenses, and costs relating to the license or sale of VCS in general and VCS Multicore, VCS MX, and VCS Cloud in particular.

Yu Decl., Ex. F. Because Mr. Gandhi receives much of Synopsys's financial information from lower-level employees that report to him, *see* Gandhi Decl., ¶ 7, the deposition of Synopsys's 30(b)(6) witness provides Dynetix with a much less intrusive avenue of obtaining discovery on the issue of damages.

In addition to the upcoming 30(b)(6) deposition on damages, Synopsys has already provided a substantial amount of damages discovery to Dynetix in this case. For example, Synopsys has provided detailed financial information in response to the damages interrogatories that Dynetix propounded, including Synopsys's annual foreign and domestic revenue from VCS, the budget and expenses for Synopsys's Verification Group, and a detailed breakdown of VCS revenue by product category. *See* Yu Decl., Ex. G (Synopsys's Responses to Dynetix's Third Set of Interrogatories). Synopsys has also produced numerous documents supporting the financial data set forth in its interrogatory responses, including purchase agreements, invoices, and purchase orders. *See id.*, ¶ 9. Mr. Gandhi has no discoverable information on product revenues that has not already been provided to Dynetix or will be provided in the upcoming 30(b)(6) deposition on damages. Dynetix has no compelling reason to take Mr. Gandhi's deposition.

//

//

## IV. CONCLUSION

For the reasons stated above, the Court should grant Synopsys's motion for a protective order and preclude Dynetix from taking the deposition of Mr. Gandhi.[1]

Dated: April 2, 2013

Respectfully submitted,

CHRIS R. OTTENWELLER
I. NEEL CHATTERJEE
BENJAMIN J. HOFILEÑA
JASON K. YU
Orrick, Herrington & Sutcliffe LLP

By: /s/ *Chris R. Ottenweller*
CHRIS R. OTTENWELLER
Attorneys for Defendant
SYNOPSYS, INC.

OHSUSA:753431100.8

[1] If the Court is inclined to allow Dynetix to take Mr. Gandhi's deposition, the Court should limit the time and scope of Mr. Gandhi's deposition in order to minimize the "tremendous potential for abuse or harassment." *Celerity*, 2007 WL 205067, at *3 (citations omitted). Given Mr. Gandhi's limited knowledge of this case, the deposition should be limited to no more than two hours. *See Apple*, 282 F.R.D. at 259 (limiting number of hours for several depositions of high-level executives); *see also* Fed. R. Civ. P. 26(c)(1)(B) (permitting the Court to limit the scope of requested discovery). This limitation is especially necessary given Dynetix's propensity for taking overbroad discovery from Synopsys and its customers on issues that have nothing to do with the infringement allegations in this litigation. *See, e.g.*, Dkt. No. 270 at 3-4 (Synopsys's Opp. to Dynetix's Motion to Amend Infringement Contentions); Dkt. No. 265 at 4-5 (Synopsys's Opp. to Dynetix's Motion to Extend Fact Discovery); Dkt. No. 277 at 2-6 (Synopsys's Opp. to Dynetix's Third Motion to Compel).