**LiLaw Inc., a Law Corporation**
J. James Li (SBN 202855)
5050 El Camino Real, Suite 200
Los Altos, California 94022
Telephone: (650) 521-5956
Facsimile: (650) 521-5955
Email: lij@lilaw.us

Attorneys for Plaintiff Dynetix Design Solutions Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| DYNETIX DESIGN SOLUTIONS INC., a California corporation,<br>Plaintiff,<br>vs.<br>SYNOPSYS INC., a Delaware corporation, and DOES 1-50<br>Defendants. | Case No. CV11-05973 PSG<br><br>**PLAINTIFF DYNETIX'S OPPOSITION TO DEFENDANT SYNOPSYS'S MOTION FOR PROTECTIVE ORDER**<br><br>**Date: May 7, 2013 (original)**<br>**April 9, 2013 (updated)**<br>**Time: 2:00p.m.**<br>**Court: Courtroom 5 - 4th Floor**<br>**Judge: Hon. Paul S. Grewal** |
| SYNOPSYS INC.,<br>Counterclaimant,<br>vs.<br>DYNETIX DESIGN SOLUTIONS INC.,<br>Counter-Defendant. | **Redacted** |

## I. INTRODUCTION[1]

The apex rule applies only to "apex" executives, not to Manoj Gandhi, who is a vice president in charge of an R&D group which does nothing but developing the infringing product, VCS, as well as associated IPs. The apex rule is inapplicable to Gandhi also because of his personal involvement in the development and marketing of Parallel VCS ("PVCS"), the key infringing component of VCS. Even the small number of emails that Synopsys has produced show that Gandhi directly receives reports, possibly on a daily basis, of PVCS development and directly dispenses instructions and guidance on these R&D activities. The documents also show that Gandhi directly pitched to important customers like AMD about PVCS in the pivotal time period of 2006 and 2007, when Dynetix confronted Synopsys regarding the infringement of the '898 patent and when Synopsys decided to ignore the patent and to continue with its development and sales of PVCS. The detailed presentation to AMD was authored by none but Gandhi himself, and thus he himself must properly explain the document. Gandhi also gives quarterly presentations to the top management with much information relevant to many issues of the case. Again, only Gandhi himself can properly answer questions about these quarterly presentations.

Even Synopsys has to admit that Dynetix has the right to depose Gandhi because Dynetix's letter in May 2006 regarding the '898 patent was addressed to Gandhi. Synopsys, however, filed the instant motion because it wanted to limit the deposition to 2 hours. Synopsys relied on Gandhi's claim that he did not remember either the letter or the '898 patent. To Dynetix, this claim alone is very troubling in view of the following facts:

- Three months before Gandhi received the letter, in February 2006, Redacted by LiLaw Inc [redacted]
- Around the same time of receiving the letter, in 2006, Gandhi personally presented to

[1] In the late afternoon of April 4, 2013, Dynetix's counsel received the court's notice of requiring Dynetix to file the opposition by midnight of the next day. Dynetix's counsel had a 30(b)(6) deposition of Synopsys on April 5, 2013. Thus, counsel had very limited time to draft this opposition. Dynetix asks for the Court's forgiveness for its roughness.

Redacted by LiLaw Inc [redacted].

- A product version of PVCS was to release in October 2006, within 4 months of Synopsys's response to Dynetix, denying Synopsys's development of PVCS.
- Redacted by LiLaw Inc [redacted]. The voluminous presentation for at least one of the review meetings has been produced. It is full of important information that is highly relevant to how Gandhi, as the head of the group, made the decision to continue the PVCS project without taking a license of the '898 patent.

Thus, it is amid all these PVCS activities when Gandhi received Dynetix's letter asking Synopsys to take a license of the '898 patent. If Gandhi did not even remember this letter and at the same time went full speed ahead with the PVCS project, this fact alone must be properly investigated because it is highly probative of willful infringement. Thus, based on Gandhi's declaration, it is a certainty that he will be called as an adverse witness at trial. Dynetix must have the right to properly depose him before putting him on the stand.

## II. <u>FACTS AND ARGUMENT</u>

### A. The Apex Doctrine Cannot Be Applied in a Way to Abrogate Federal Rules of Civil Procedure

Although many district courts have recognized the apex deposition doctrine, with mixed results, one Circuit Court has reviewed it extensively and essentially abolished it.

In *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. Mich. 2012), the court overruled the apex doctrine to the extent that it shifted the burden of proof to the deposing party, and reversed a magistrate's order granting a motion for protective order regarding the deposition of a top executive. *Serrano* starts with the Federal Rules of Civil Procedure 26(c)(1)(A), which allows the court to issue a protective order for a showing of good cause, in order to prevent "annoyance, embarrassment, oppression, or undue burden or expense." *Id.* The court goes on to state that "to justify a protective order, one of Rule 26(c)(1)'s enumerated harms must be illustrated with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." On that basis,

the court concluded that "the magistrate judge erred as a matter of law in relying on 'apex doctrine' to grant the protective order. In doing so, the magistrate judge considered only Farmer's knowledge relevant to the EEOC's claims and failed to analyze, as required by Rule 26(c)(1), what harm Farmer would suffer by submitting to the deposition." This decision basically eviscerates the entire apex doctrine; instead, the proper analysis should be based on the normal discovery analysis of relevancy and harms.

There is no fundamental difference between the Sixth Circuit's and Ninth Circuit's rules on issuance of a protective order, both of which require a showing of a particular harm. *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) ("a party … from whom discovery is sought … bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted.") Thus, it is a reasonable prediction that the apex doctrine will not withstand the appellate court's scrutiny in the Ninth Circuit. It is very questionable whether the apex doctrine, as it is applied by some district courts which reverse the burden of proof, is good law. This Court thus should be vigilant on this point to prevent an over extensive application of the apex doctrine that would abridge the good cause requirement of Rule 26(c)(1)(A).

**B. The Apex Doctrine Is Inapplicable to Mr. Gandhi**

**1. Gandhi Is Not an Apex Executive**

Manoj Gandhi is not a top executive who is in charge of many products and many aspects of Synopsys; he is in charge of one R&D group called Redacted by LiLaw Inc [redacted]. *See* Ex. 9 (showing the only product of the Redacted by LiLaw Inc [redacted] The entire group is considered an R&D team because all of its expenses are classified as R&D expenses by Synopsys. Ex. 13 (Morrison Dep.) Gandhi is thus not the kind of apex executive who oversees many activities that are irrelevant to the case. To the contrary, Gandhi has essentially one important job: to improve VCS through R&D. Because VCS is the accused product and the accused activities are the R&D activities of Gandhi's group, the assumption of the apex doctrine does not apply to him, no matter how many people he supervises.

From a few emails that Synopsys produced from Gandhi, it is clear that he is intimately involved in the minute details of VCS R&D, including PVCS.

For example, Exhibit 1 is an email exchange among Alex Potapov, Dasgupta, and Gandhi. [redacted] *Id.* at S46613-14. This email exchange shows that Gandhi is not the kind of apex executive who is much removed from daily operations. To the contrary, he commands the daily R&D works by directly receiving reports of problems and directly dispensing orders and suggestions related to PVCS development.

Exhibit 2 is another email from Potapov, [redacted] Gandhi replied:

> [redacted]

Ex. 2 at S46942. [redacted]

> [redacted]

*Id.* at S46941. Again, this email exchange shows Gandhi's direct supervision of the PVCS R&D, likely on a daily basis. Therefore, contrary to what Synopsys claims, Gandhi is an R&D manager who manages essentially only VCS in a very hands-on manner. He is not the kind of top executive that the apex rule is set out to protect.

### 2. Gandhi Has First-Hand, Non-Cumulative Personal Knowledge of Highly Relevant Matters

The record of the case is replete with evidence of Gandhi's personal knowledge of matters directly related to the issues of the case, as shown by the examples below.

Exhibit 3 shows that Gandhi [redacted] The document is a presentation by Gandhi, entitled "[redacted]

This presentation is dated 2006, which is a pivotal year for the willful infringement issue. [redacted] Ex. 10, p. 1 [redacted] *Id.* However, when Dynetix sent a letter to Synopsys in May 2006, asking Synopsys to license the ‘898 patent, Synopsys rejected the request and claimed that it had no plan to develop a multithreaded simulation engine.

Against this backdrop, [redacted].” Ex. 3 at S100923-24[3]. The No. 1 item in the “next level of collaboration” with AMD in 2006, according to Gandhi, was “[redacted].” Ex. 3 at S100628. This document is of course very important to the willful infringement case. As the head of the VCS R&D team, it is impossible that Gandhi did not know about the PVCS development. Exhibit 3 shows that he was very much involved in the project. Yet he allowed Synopsys’s lawyer to misrepresent the facts to Dynetix so that the PVCS project could go on in secrecy. The document is also of great importance to damage issues because it goes to show the importance of PVCS in VCS’s market competitiveness and in customer appeals. Nobody else in Synopsys is more qualified than Gandhi to answer questions on this document because he is the author. A 30(b)(6) witness can only provide speculation on the meaning of the slides and the history behind the slides.

Exhibit 4 shows [redacted] Ex. 4 at S104196. Again, it is obvious that the document is very important to the issues of willful infringement and damages. Again, as he is the author of the document, only Gandhi has the requisite personal knowledge to answer questions on this document.

---

[2] “Ambarella” is an AMD design project.

[3] Like many critical documents, this document is poorly produced by Synopsys. Synopsys’s counsel, Orrick, is a large law firm with deep experience in patent litigation. Yet, document production always has all kinds of problems when a crucial batch of rolling production is made and often at a crucial time, e.g., shortly before a deposition.

Exhibit 7 shows Gandhi's personal involvement in managing Synopsys's relationship with Intel.

Exhibit 11 is a set of slides dated [redacted] Ex. 11 at S27060. This is likely the presentation slides for [redacted] This presentation summarizes the purpose and design of PVCS and has immense value to both the infringement and willful infringement case, and damages. For example, it states that [redacted]." *Id.* at S27069. It describes the vision of PVCS and the performance goal for 2007 to 2009. *Id.* at S27074. It also describes PVCS as [redacted] *Id.* at S27075. Thus, this is a pivotal document as to the issue of infringement related to the element of creating threads according to the available number of CPUs. Given the presentation was made specifically to Gandhi, and given the timing of the presentation, i.e., a few months after Synopsys falsely stated to Dynetix that it was not doing multithreading at all, this document is also highly important to the issue of willful infringement. Gandhi's deposition is very crucial as to how the decision was made by the Verification Group to continue pushing for the infringing products while making false representation to Dynetix to buy time Because he is the head of the Group and the presentation was specifically made to him, there is no person who is better qualified to answer questions on the ramifications of the presentation.

Exhibit 8 is an example of the quarterly business review authored by Gandhi, which contains a wealth of damage and product related information. Every quarter, Gandhi uses this business review presentation to report to the top executive of Synopsys. Ex. 13. Notice here that Dynetix is not trying to depose any of the top executives to whom Gandhi makes his reports quarterly, but Gandhi himself. Again, no one is more qualified than Gandhi to testify about these quarterly reviews unless one of the top executives is deposed.

### C. Gandhi's Denial of His Knowledge of Dynetix's Letter in Itself Raises a Serious Issue of Willful Infringement

Synopsys emphasizes that Gandhi could not even remember the letter from Dynetix, and thus has no relevant information as to the issue of willful infringement. Synopsys is oversimplifying the evidentiary process. It is no surprise that Gandhi denies any memory of the Dynetix letter. That does not mean he is not the key person in Synopsys's decision to continue PVCS in full speed in the 2006-2007 period, despite its knowledge of the likelihood of infringing the '898 patent. In fact, around the time when Synopsys stated to Dynetix that it was not developing the multicore project, the first scheduled release of PVCS was only three months away. Ex. 12 at S27397 Redacted by LiLaw Inc [redacted]. Also around the same time, Gandhi himself made the presentation to AMD, touting the merits of PVCS. Ex. 3. Further, a few months after Dynetix's letter, three presentations on PVCS were made specifically to Gandhi himself. Ex. 5 at S192960. Yet, he could not even remember Dynetix's letter that basically accuses PVCS of infringing the '898 patent and asks for license. Thus, the fact that Gandhi does not remember the letter is by itself direct evidence of willful infringement, which goes to show his willful ignorance or reckless disregard of Dynetix's patent right. Thus, because of his declaration, Synopsys will definitely call Gandhi as an adverse witness at trial. Dynetix will have to depose Gandhi for that purpose alone.

Thus, Mr. Gandhi holds the key to a wealth of potentially highly relevant evidence. Synopsys has no justification to block his deposition or limit his deposition to 2 hours, which probably would not even suffice to cover some background questions. Synopsys's motion for protective order should be denied.

DATED: April 5, 2013

**LILAW INC.**
**ATTORNEYS FOR PLAINTIFF DYNETIX DESIGN SOLUTIONS, INC.**

By /s/ J. James Li

J. James Li, Ph.D.

# Exhibit 1

# FILED UNDER SEAL

# Exhibit 2

# FILED UNDER SEAL

# Exhibit 3

# FILED UNDER SEAL

# Exhibit 4

# FILED UNDER SEAL

# Exhibit 5

# FILED UNDER SEAL

# Exhibit 6

# FILED UNDER SEAL

# Exhibit 7

# FILED UNDER SEAL

# Exhibit 8

# FILED UNDER SEAL

# Exhibit 9

# FILED UNDER SEAL

# Exhibit 10

# FILED UNDER SEAL

# Exhibit 11

# FILED UNDER SEAL

# Exhibit 12

# FILED UNDER SEAL

# Exhibit 13

# FILED UNDER SEAL