**LiLaw Inc., a Law Corporation**
J. James Li (SBN 202855)
5050 El Camino Real, Suite 200
Los Altos, California 94022
Telephone: (650) 521-5956
Facsimile: (650) 521-5955
Email: lij@lilaw.us

Attorneys for Plaintiff Dynetix Design Solutions Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| DYNETIX DESIGN SOLUTIONS INC., a California corporation,<br>Plaintiff,<br>vs.<br>SYNOPSYS INC., a Delaware corporation, and DOES 1-50<br>Defendants. | Case No. CV11-05973 PSG<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO SUPPLEMENT INFRINGEMENT CONTENTIONS, FOR RECONSIDERATION OF A PRIOR RULING, AND FOR MODIFICATION OF THE PROTECTIVE ORDER** |
| SYNOPSYS INC.,<br>Counterclaimant,<br>vs.<br>DYNETIX DESIGN SOLUTIONS INC.,<br>Counter-Defendant. | **Date: April 9, 2013**<br>**Time: 10:00 a.m.**<br>**Court: Courtroom 5 - 4th Floor**<br>**Judge: Hon. Paul S. Grewal**<br><br>**Redacted** |

## TABLE OF CONTENTS

I. INTRODUCTION ..... 1
II. ARGUMENT ..... 3
A. The Request for Modification of the Protective Order Should Be Granted Because the Case Against the Customers Are Substantively Part of the Instant Case ..... 3
B. The Amendment for Partition Compile Should Be Allowed ..... 4
1. The LCA Is A Vague Document That Should Not Trigger the Diligence Clock ..... 5
2. Synopsys Has "Gamed" the Local Rules ..... 6
3. Allowing the Requested Amendment Is Conducive to Judicial Economy ..... 8
4. There is No Prejudice to Synopsys ..... 9
5. Synopsys, Not Dynetix, Behaved Improperly During the Intel Deposition ..... 9
C. The Court Should Reconsider the Earlier Ruling on Remote Access ..... 10
1. Synopsys Should Not Be Allowed to "Game" the Local Rules ..... 10
2. There Was No Delay and No Prejudice ..... 13
III. CONCLUSION ..... 13

# TABLE OF AUTHORITIES

## CASES

*Abels v. JBC Legal Group,*
*P.C.*, 229 F.R.D. 152, 156 (N.D. Cal. 2005) ..... 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..... 11

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048, 1052 (9th Cir. Cal. 2003) ..... 11

*Hall v. City of L.A.*,
697 F.3d 1059, 1073 (9th Cir. Cal. 2012) ..... 11

## STATUTES

Fed. R. Civ. P. 15, Notes of Advisory Committee on 1963 amendments ..... 8

## I. INTRODUCTION

Among the three requests that Dynetix makes via the instant motion, the issue of the Protective Order ("PO") modification should be the easiest to resolve. The requested PO modification would allow the discovery information of this case to be used in a new case against Synopsys's customers. These customers are substantively part of the instant case because they have been named as Doe defendants. They are severed into a new case procedurally because of the long delay in obtaining their identities, which was caused by Synopsys's stubborn refusal to provide such information at the beginning of the case. Thus, substantively speaking, the requested modification is not actually modification because the PO is intended to be applied to the claims against the customers in the first place. The procedural severance of the customer defendants into a new case does not justify the burden and costs of requiring the parties to repeat the same discovery requests and the same depositions just to obtain the same evidence in the new case. Thus, the request for the PO modification should be granted. The same PO should govern the customer case for now, and the same discovery information protected by the PO should be allowed in the customer case.

The request for leave to amend the infringement contention regarding Partition Compile is not difficult to resolve, either. Redacted by Lilaw, Inc. [redacted] In fact, other than adding the name of Partition Compile, the proposed amended contentions contain essentially no additional technical allegations

regarding this feature. The reason to this amendment is to make sure that Dynetix's reasonable royalty calculation may include Partition Compile. Thus, there is no delay or prejudice associated with the leave to amend the infringement contentions regarding Partition Compile.

For the request of reconsideration of the prior ruling denying leave to amend regarding the Remote Access claims, Dynetix's purpose of making the request is three-folded. First, Dynetix intends to set the record straight on the facts that led to this Court's finding of "gamesmanship" on Dynetix's part. As shown by the time sequence presented in the opening brief, it was Synopsys which "gamed" the system by withholding the license agreements for several months. Dynetix actually told the whole world, six months before the claim construction hearing, that it would seek to assert the Remote Access claims against the normal VCS. Synopsys offered no dispute as to these facts because it simply could not dispute them.

Second, Dynetix wants to contest the Court's finding of prejudice based on the possibility that Synopsys might have chosen a different term for claim construction had the Remote Access Claims been asserted earlier. Other than the lack of any indication of any different terms that might have been chosen, the fundamental problem, as Dynetix sees it, is the finding of prejudice on an issue of law which can be addressed anytime, even during the trial, based on the intrinsic evidence. Thus, in Dynetix's view, there cannot be any real prejudice simply because a term has not been construed.

Third, Dynetix wants to make a record on an important issue that, in Dynetix's view, is plaguing patent litigations. That is the over-stringent interpretation of the good cause requirement of the Patent Local Rule 3-1. The facts of this case will provide an instrument for the Federal Circuit or even the Supreme Court of the United States to address the issue that the local rule is being interpreted to override the liberal standard for allowing an amended complaint under Rule 15 of the Federal Rules of Civil Procedure. As the facts of this case have demonstrated, this over-stringent interpretation of the Local Rule has given the defendants the license to game the system, by producing vague information earlier but withholding crucial information as long as it can, so that the plaintiff's case is essentially limited to publically available information. This practice violates both the spirit, if not the letter, of Rule 15.

If this court indeed requires a motion for leave for reconsideration before filing the motion, as

Synopsys contends, Dynetix asks the Court to treat the instant motion as a motion for leave for filing the motion for reconsideration so long as the Court allows Synopsys to make the record regarding the above three issues.

## II. ARGUMENT

### A. The Request for Modification of the Protective Order Should Be Granted Because the Case Against the Customers Are Substantively Part of the Instant Case

In its Opposition, Synopsys completely ignores the fact that the customer defendants are substantively, though not procedurally, part of the instant case. The information obtained in this case is supposed to be used in claims against the customers when the Does are named and served. Every one of Synopsys's arguments fails in light of this fact.

Synopsys first argued that Dynetix had not identified any specific documents to be used in the case against the customers. Opp. at 11:14-23. This argument fails because the customers are already part of this case, sued for precisely the same reason as Synopsys, for infringing the '898 patent by practicing Synopsys's VCS. Every piece of information relevant to this case is also relevant to the customer case. Had the Does been named in this case, everything produced in this case would have been used against the Doe customers. It is puzzling why, simply because the customers are severed from this case into a new action for procedural reason, suddenly something produced in this case became irrelevant in the new action. In fact, Synopsys could not identify a single item produced in this case that is not relevant to the action against the customers.

Synopsys also made an even more puzzling argument that Dynetix had not stated the nature of the case against the customers. Opp. at 11:24-25. To the contrary, the nature of the case has been stated explicitly in the complaint of this case against all VCS customers as Doe defendants¸ i.e., infringement of the '898 patent for using VCS. These customers have to be severed into a new case purely for procedural considerations, i.e., not to cause undue delay to the case against Synopsys and for judicial economy, as discussed in the opening brief. This change in procedure does not alter the nature of the case against the customers.

Synopsys claimed that it, as well as its customers, would suffer prejudice if the discovery



Li LAW

materials were used in a new action because they had not expected this to happen when they produced the materials. Opp. at 12:8-13:3. To the contrary, because the customers are already in this case as Doe defendants when the Protective Order was entered, Synopsys and its customers should have no reasonable expectations that the information they produced would not be used in claims against the customers. Further, the same protective order will still govern in the new case, at least until the parties in that case modify it. The materials that Synopsys and its customers do not want to share with each other are definitely marked "attorneys' eyes only" because they certainly did not want to share them with Dynetix, either. If Dynetix's attorneys are allowed to access these documents, it is inconceivable why the attorneys for customers should not be allowed to access the documents. If the customers had appeared in this case, Synopsys of course would have to allow the customers' lawyers to review these documents under the Protective Order. Thus, as usual, Synopsys is manufacturing prejudice out of thin air.

Importantly, if Synopsys thinks this kind of obstruction will stop Dynetix from suing the customers, it is simply wrong. Dynetix will sue the customers one way or another. The only issue here is whether this Court should force Dynetix, as well as Synopsys and its customers, to go through the same document requests, same interrogatories, and same depositions to obtain the same evidence that is readily available. There is simply no justification for this wasteful practice in light of the close connection between the customer suit and the present case.

**B. The Amendment for Partition Compile Should Be Allowed**

As discussed in the opening brief, it is Dynetix's position that the local rules should not be interpreted to essentially abridge the liberal standard for amending notice pleadings as set forth in Rule 15 of the Federal Rules of Civil Procedure. Since Dynetix is not asking the Court to amend the case management schedule, the "good cause" standard of Rule 16 does not apply. Thus, the "good cause" requirement of the Local Rules must be interpreted in view of the liberal amendment standard of Rule 15.

Dynetix understands that this is a much broader debate than the confines of the case because of the prevailing over-stringent interpretation of the Patent Local Rule 3-1, which is further addressed

later in this brief. However, Dynetix's request to amend its infringement contentions regarding Partition Compile should be allowed regardless of whether the local rules should be interpreted according to Rule 16 or Rule 15.

**1. The LCA Is A Vague Document That Should Not Trigger the Diligence Clock**

On the issue of diligence, the question is whether Dynetix had a good reason to amend its infringement contentions earlier. Redacted by Lilaw, Inc. [redacted]

---

[1] "S" denotes "SYN-DLIT-," the long bates label prefix used by Synopsys in this case.

[redacted]

**2. Synopsys Has "Gamed" the Local Rules**

Only recently, just before the Intel deposition, Synopsys produced many documents that highlighted the importance of Partition Compile. [redacted]

Here, it is important to emphasize the difference between the term "VCS Multicore" as it is used in the infringement contentions and the same term that Synopsys uses to describe a special feature of VCS, which apparently only includes ALP and DLP. The infringement contentions define the term as "VCS with its multicore functionality" (Yu Decl. Ex. A, p. 3 of 6) and as the "parallel processing of the verification process using the multicore, multithreading computer architecture" (*Id.*, p. 6 of 26). Thus, the term "VCS Multicore" as it is used in the infringement contentions is not limited to ALP and DLP. It is actually co-terminus with PVCS, the Synopsys project that includes all parallel processing features of VCS, including Partition Compile.

Thus, until the recent production of the documents showing the importance of Partition Compile in PVCS, Dynetix had no reason to amend its infringement contentions. The sequence of its document production shows how Synopsys has been "gaming" the local rules. It produced the vague documents, including the LCA and the source code very early, but withheld the crucial documents

until very recently.

For example, Li Reply Decl. Redacted by Lilaw, Inc. [redacted]

These recently-produced documents show Dynetix that, despite the fact that the VCS and VCS MX user guides in 2011 do not provide any description of Partition Compile, it is a very important feature for the issue of reasonable royalty calculation. This provides a strong reason for Dynetix to investigate this feature, hence the request for amending the infringement contentions.

Redacted by Lilaw, Inc. [redacted] *Id.* Ex. I.

The fact that these important documents regarding Partition Compile should have been produced a long time ago demonstrates how Synopsys is "gaming" the local rules. The gamesmanship has two related parts: (1) to produce some documents, which mention Partition Compile in passing and which would not give Dynetix any reason to pay any attention to this feature, as early as possible; and (2) to withhold the documents, which will tip Dynetix off of the importance of the feature, for as long as possible. This strategy gives Synopsys the ability to argue for a long delay or lack of diligence while in fact no reasonable person would have investigated this feature based on the vague documents produced early. In this case, Synopsys produced the LCA in its first installment of its "rolling" production in April 2012. The "rolling" production rolled for nearly a year, and Synopsys still withheld many crucial documents, including the recently-produced emails.

These emails were requested on February of 2012, but were produced a year later on February 19, 2013, a few days before the Intel deposition. Li Reply Decl. ¶ 5. Furthermore, the documents shown in Li Reply Decl. Exs. F-H are presentations which should have been produced in response to Dynetix's early document request Nos. 2, 3, 6, 8, and 18, independent of the requests for emails. *Id.* ¶ 5. The way that Synopsys games the local rules highlights a serious problem with the current stringent interpretation of the local rules. It essentially gives the defendant the license to play games which are impossible to stop and which are highly effective in setting up a delay argument to defeat an attempt to amend the infringement contentions (this point will be discussed further in this Reply).

**3. Allowing the Requested Amendment Is Conducive to Judicial Economy**

To be sure, this game of selective production, though may indeed limit Dynetix's case against Synopsys, will not limit the case against Synopsys's customers like Intel. Regardless of how this Court rules on the instant motion, Partition Compile and Remote Access will be part of the new case against the customers.

This fact highlights the need for a liberal standard for granting leave to amend infringement contentions, similar to the standard for amending the complaint. The liberal standard for amending the complaint was developed in part to prevent the plaintiff from being "needlessly remitted to the difficulties of commencing a new action even though events occurring after the commencement of the original action have made clear the right to relief." Fed. R. Civ. P. 15, Notes of Advisory Committee on 1963 amendments. The needless burden in this case for the plaintiff is to force Dynetix to essentially try the same patent in full, twice. If the Court allows all the infringing features to be resolved in this case, that would leave very little to do for the infringement case against the customers because it would have been established that the use of VCS practices each and every element of the asserted claims. Conversely, if the Court does not allow the addition of Partition Compile (or Remote Access), nearly all items of infringement evidence (including ALP and DLP) will still have to be presented at trial in the case against the customers because otherwise it would be impossible for the jury to understand why Partition Compile (or Remote Access) infringes the asserted claims. Thus, judicial economy argues for allowing leave to amend the infringement

contentions in this case, just like the rationale for the liberal standard for allowing amendment of the complaint.

**4. There is No Prejudice to Synopsys**

As shown by the proposed amendment to the infringement contentions, there is really no substantive technical amendment due to the addition of Partition Compile. The amendment is simply to make sure that it is clear that the accused instrumentality includes Partition Compile, primarily for the purpose of damage determinations.

Synopsys's suggestion that this amendment is motivated by the fear of Synopsys's summary judgment is simply absurd. In no time in this case did Dynetix in any way believe that Synopsys could prevail by summary judgment on DLP and ALP. The parties' briefs on these issues should speak for themselves. In fact, at this stage of the case, Dynetix believes this case presents a good example of willful infringement. The requested amendment is to clarify a subject matter that is already within the broad definition of the infringement contentions and for the common good of judicial economy, as discussed above. It has nothing to do with Synopsys's summary judgment motions.

Synopsys also contends that the amended contentions do not specifically set forth the infringing elements of Partition Compile. Redacted by Lilaw, Inc. [redacted]

Synopsys's claim of its need to amend the invalidity chart is also unavailing. If there has not been any change of the technical assertions by the amended infringement contentions, there cannot be any need or justification for amending the invalidity contentions. Synopsys in fact has not provided any specifics for its alleged need to revise the invalidity contentions. Therefore, Synopsys's claim of prejudice is baseless. The requested amendment should be allowed.

**5. Synopsys, Not Dynetix, Behaved Improperly During the Intel Deposition**

As usual, Synopsys raises various irrelevant issues just to make Dynetix look bad. For

example, Synopsys argued at length about the alleged inappropriateness of Dynetix's deposition of Intel. As shown by Dynetix's Third Motion to Compel, Dynetix's deposition of Intel was justified in many ways. To the contrary, it was Synopsys and Intel which made numerous frivolous objections during the deposition. It is nearly puzzling how Synopsys can suggest that Dynetix had no right to ask about the custom features that Synopsys has developed for Intel over the years, Redacted by Lilaw, Inc. [redacted] Dynetix would not know, without asking first, whether a certain feature is related to the issue of infringement. Even assuming that a particular custom feature is not related to the issue of infringement, it is still highly relevant information for assessing reasonable royalty based on Intel's payment to Synopsys because such payment has to be apportioned to the infringing features to the extent possible. It is thus Intel and Synopsys who acted improperly during the Intel deposition, not Dynetix, although this debate really has nothing to do with the instant motion.

**C. The Court Should Reconsider the Earlier Ruling on Remote Access**

There are three major reasons that Dynetix asks this Court to reconsider the earlier decision on the Remote Access: (1) to set the record straight on the facts that led to this Court's finding of "gamesmanship" on Dynetix's part; (2) to make the record as to the incorrect finding of prejudice based on the possibility that Synopsys might have chosen a different term for claim construction; and (3) to make a clear record of Dynetix's view of the error in interpreting the local rules to override the liberal standard for amending the complaint. Whether this Court wants to treat this part of the motion as a motion for leave for reconsideration or a motion for reconsideration, it does not make any difference for these purposes.

**1. Synopsys Should Not Be Allowed to "Game" the Local Rules**

As the discussion on Partition Compile shows, Synopsys has been gaming the local rules in its efforts to limit Dynetix's infringement contentions to the publically available information. The gaming is amazingly simple: disclosing some vague information earlier and withholding the crucial information as long as possible. It is Dynetix's view that the fact that Synopsys and other defendants may game the local rules in such a way is because of the overly stringent interpretation of the local

rules, which makes it very difficult to amend the infringement contentions. It is also Dynetix's view that this overly stringent interpretation contradicts the spirit, if not the letter, of the liberal standard for amending a complaint under the Federal Rules of Civil Procedure.

This case provides a good example for this broader debate on the local rules. Synopsys filed its Answer and Counterclaim on January 30, 2012. Li Reply Decl. ¶ 7. The 26(f) conference was held on February 15, 2012. *Id.* Dynetix propounded its first set of document requests and first set of interrogatories on February 27, 2012. *Id.* The initial case management conference ("CMC") was held on March 6, 2012. *Id.* Under the Local Rules, the infringement contentions must be served 14 days after the initial CMC. Pat. L.R. 3-1. Accordingly, Dynetix served its infringement contentions on March 20, 2012. Li Reply Decl. ¶ 7.

This timing sequence above shows that in this case, like in most if not all patent cases before this Court, the patentee must serve its infringement contentions without any benefit of discovery. Thus, the patentee must draft the infringement contentions with the same amount of information as it has for drafting the complaint. Without the patent local rules, the plaintiff is likely to be required to put the infringement contentions in its complaint under the plausibility standard of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Thus, in essence, amending the infringement contentions should not be made any harder than amending the complaint, otherwise it would abridge the plaintiff's right under Rule 15.

One rationale for a much higher standard for amending the infringement contentions than amending the complaint is that the invalidity contentions are dependent on the infringement contentions. That, however, is true on all kinds of complaints because the answer and counterclaims are always dependent on the complaint. In fact, under the *Twombly* standard for pleading, both the infringement contentions and the invalidity contentions should be part of the complaint and counterclaims anyway. For amending a complaint, a delay without a proof of prejudice is insufficient to deny leave to amend. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. Cal. 2003); *Hall v. City of L.A.*, 697 F.3d 1059, 1073 (9th Cir. Cal. 2012) (reversing order denying leave to amend despite a 2-year delay because "it is questionable whether amendment would have required additional discovery, given the extensive discovery the parties had conducted already.");

*Abels v. JBC Legal Group, P.C.*, 229 F.R.D. 152, 156 (N.D. Cal. 2005) (allowing leave to amend despite a 10-month delay because the discovery deadline had not yet passed). In contrast, under this Court's interpretation of Pat. L. R 3-1, a delay alone would preclude amendment of the infringement contentions, regardless of whether the delay actually prejudiced the invalidity contentions of the defendant. There appears to be no disciplined reason to justify this schism between amending the complaint and amending the infringement contentions.

Another oft-quoted reason for more stringent criteria for amending the infringement contentions is the claim construction. Claim construction, however, is an issue of law based mostly on intrinsic evidence. Thus, there cannot be any prejudice in the traditional way for amending a complaint, i.e., missed chance of conducting discovery. An issue of law can always be resolved anytime in a case. Particularly, the meaning of a term can be resolved even during the trial if needed because it is based on the intrinsic evidence that requires essentially no discovery. Thus, the claim construction cannot be a valid excuse for treating the infringement contentions differently from the complaint because there can seldom be actual prejudice due to a delay on the construction of a certain term. At the very least, the plaintiff should be given a chance to prove there is no prejudice under the "undue delay" criteria, on the issue of claim construction, even though there has been a delay.

The current stringent interpretation of the Pat. L.R. 3-1 has become a license for the defendants to play games with discovery for the purpose of precluding any amendment of the infringement contentions. This case again serves as a good example of such a game playing, as discussed earlier for the Partition Compile feature. For the Remote Access feature, the alleged delay is set up by a generic licensing description, which was very likely not even on Synopsys's website when the complaint was filed. Like the LCA for the Partition Compile, the generic licensing description is at best a vague document for reaching a conclusion as to whether the basic VCS, instead of VCS Cloud, infringes the asserted claims, as discussed in the opening brief. Like in the case of Partition Compile, Synopsys fought hard not to produce the key documents, which are the license agreements with its customers. Thus, the current criteria for determining leave to amend infringement contentions are essentially a legal loophole because it overemphasizes the delay in contradiction to the "undue delay" standard for amending a complaint. In a complicated technology

case, discovery tends to be very difficult to conduct, and the technology tends to be difficult to fully understand. The current standard that denies leave to amend for a few months of delay, with or without prejudice to the defendant, has given the defendants ample opportunity to game the system to deprive the plaintiff of the opportunity to amend the contentions through the discovery.

**2. There Was No Delay and No Prejudice**

As explained in the opening brief, there was no delay in Dynetix's seeking of leave to amend regarding the Remote Access claims. Mo. at 12-14. There is also no prejudice to Synopsys. The only prejudice that the Court identified is that Synopsys could have chosen different terms for claim construction. Claim construction, however, is a legal issue that can be addressed anytime, even during the trial. It is not clear why there is any real prejudice to Synopsys simply because it might have chosen a different term to construe. Synopsys has never identified any additional terms it wants to construe for the Remote Access feature in any event. Thus, Dynetix asks the Court to reconsider the earlier ruling denying leave to amend infringement contentions regarding the Remote Access feature.

## III. CONCLUSION

For the foregoing reasons, Dynetix's motion for modification of protective order, for leave to amend its infringement contentions regarding Partition Compile, and for reconsideration of the earlier order denying leave to amend infringement contentions regarding Remote Access should be granted.

DATED: March 26, 2013

**LILAW INC.**
**ATTORNEYS FOR PLAINTIFF DYNETIX DESIGN SOLUTIONS, INC.**

By /s/ J. James Li

J. James Li, Ph.D.