**LiLaw Inc., a Law Corporation**
J. James Li (SBN 202855)
5050 El Camino Real, Suite 200
Los Altos, California 94022
Telephone: (650) 521-5956
Facsimile: (650) 521-5955
Email: lij@lilaw.us

Attorneys for Plaintiff Dynetix Design Solutions Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| DYNETIX DESIGN SOLUTIONS INC., a California corporation,<br>Plaintiff,<br>vs.<br>SYNOPSYS INC., a Delaware corporation, and DOES 1-50<br>Defendants. | Case No. CV11-05973 PSG |
| SYNOPSYS INC.,<br>Counterclaimant,<br>vs.<br>DYNETIX DESIGN SOLUTIONS INC.,<br>Counter-Defendant. | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO SUPPLEMENT ITS INFRINGEMENT CONTENTIONS, FOR RECONSIDERATION OF A PRIOR RULING, AND FOR MODIFICATION OF THE PROTECTIVE ORDER; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Date: April 9, 2013**<br>**Time: 10:00 a.m.**<br>**Court: Courtroom 5 - 4th Floor**<br>**Judge: Hon. Paul S. Grewal** |

# TABLE OF CONTENTS

**I. INTRODUCTION ........ 2**

**II. FACTS ........ 3**

1. Early Events Related to the Remote Access Claims ........ 3
2. Later Events Related to Partition Compile ........ 6
3. Events Related to the Requested Modification of the Protective Order ........ 6

**III. ARGUMENT ........ 7**

A. The Notice Function of the Infringement Contentions Requires the Adoption of the "Undue Delay" Standard for Determining the Motion for Leave to Amend Complaint ........ 7

B. Leave to Amend Should Be Granted for the Partition Compile Feature ........ 10

C. The Court Should Reconsider the Prior Order regarding the Remote Access Claims ........ 12

D. The Protective Order Should Be Modified ........ 15

**IV. CONCLUSION ........ 16**

# TABLE OF AUTHORITIES

## CASES

*Abels v. JBC Legal Group, P.C.*,
229 F.R.D. 152, 156 (N.D. Cal. 2005) .................... 9, 14
*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048, 1052 (9th Cir. Cal. 2003) .................... 8, 9, 14
*Hall v. City of L.A.*,
697 F.3d 1059, 1073 (9th Cir. Cal. 2012) .................... 9
*O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*,
467 F.3d 1355, 1365 (Fed. Cir. 2006) .................... 7, 9
*Phillips v. Borough of Keyport*,
179 F.R.D. 140, 143 (D.N.J. 1998) .................... 8
*Sonoma County Ass'n of Retired Emples. v. Sonoma County*,
2013 U.S. App. LEXIS 3856 (9th Cir. 2013) .................... 9

## STATUTES

Fed. R. Civ. P. 15 .................... 8
Fed. R. Civ. P. 15(a)(2) .................... 8

## NOTICE OF MOTION AND STATEMENT OF RELIEFS SOUGHT

Please take notice that Plaintiff Dynetix Design Solutions Inc. ("Dynetix") hereby moves the Court for the following reliefs:

1. For leave to supplement its infringement contentions as to the Partition Compile feature of VCS;

2. For reconsideration of this Court's earlier ruling denying the motion for leave to supplement infringement contentions regarding the remote access feature;

3. For modification of the existing Protective Order to allow the use of the confidential information produced in this case in a new case to be filed against Synopsys's licensees, which are named Doe defendants in this case but never identified or served.

The hearing for the Motion will be held on April 9, 2013 at 10 a.m. before Honorable Paul S. Grewal in Courtroom 5 of the San Jose Division of United States District Court, Northern District of California, located at 280 South First Street, San Jose.

The motion is based on the following Memorandum of Points and Authorities and Declaration of J. James Li in Support of Plaintiff's Motion for Leave to Supplement Its Infringement Contentions, for Reconsideration of a Prior Ruling, and for Modification of the Protective Order ("Li Decl.").

//

//

//

//

//

//

//

//

//

//

//

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

There are three major issues in this Motion. First, Dynetix asks this Court for leave to amend its Infringement Contentions regarding a newly-discovered parallel simulation feature, Partition Compile, that Synopsys claims is not part of its VCS Multicore. The current Infringement Contentions in fact generically cover this feature because the definition of VCS Multicore in the Contentions is broader than Synopsys's product classification bearing the same name, including all parallel processing simulation features using more than one processing core. The fact that the Partition Compile feature uses parallel simulation only recently came into light during discovery. Dynetix has exercised diligence to promptly seek amendment of the Infringement Contentions to specifically assert the '898 patent against the Partition Compile feature.

Second, Dynetix ask this Court to reconsider its prior order (the "Prior Order") denying Dynetix's motion for leave to amend the infringement contentions regarding the remote access claims. The Prior Order found that Dynetix was not diligent to amend the Contentions because Synopsys claimed that some generic licensing guidelines were available on its website since 2009. This claim by Synopsys is very questionable because Dynetix's search in December 2011, before the filing of the suit, did not reveal these documents. More importantly, even assuming Dynetix should be imputed with the information contained in the licensing guidelines in 2011, it did not have the requisite technical understanding of the VCS remote access features to allow it to assert the Remote Access Claims against the normal license use of VCS, until October 2012 when its expert Dr. Amin was cleared to participate in the action.

Dynetix also has to take exception to the Prior Order's inference of Dynetix's "gamesmanship," based on the timing of the prior motion and the fact that Dynetix did not mention its intent to include VCS Remote Access as accused instrumentality during the claim construction hearing on October 10, 2012. The fact is that Dynetix informed both this Court and Synopsys in May 2012, five months before the claim construction hearing, that it intended to pursue the possibility that the normal license use of VCS also infringed the Remote Access Claims. It was never a secret that

Dynetix was trying to collect evidence to amend the Infringement Contentions regarding VCS Remote Access. Further, the license agreements were produced on October 5, five days before the claim construction hearing, although they have been repeatedly demanded for several months. The timing of the production, in retrospect, was meant to delay Dynetix's awareness of the production of license agreements because of the intensity of preparing for the claim construction hearing. Counsel for Dynetix did not even look at the produced documents to know they contained license agreements, until after the hearing. Moreover, Dr. Amin was only cleared by Synopsys on October 3 and started working on the project a few days after that. It was after the claim construction hearing, on or about October 12, when counsel and Dr. Amin agreed with the existence of sufficient evidence to assert the Remote Access Claims against VCS, in addition to VCS Cloud. There cannot be any inference of gamesmanship on Dynetix's part.

Lastly, Dynetix asks this Court to modify the Protective Order to allow information be used in a new action to be filed against VCS customers. These customers are the Doe defendants in this case. The reason a new action is filed instead of identifying the Doe defendants is procedural, i.e., to avoid the inevitable disruption to the case schedule. A new action is also conducive to judicial economy because the resolution of the instant case against Synopsys will greatly simplify the case against its customers for the same products and same patent. There cannot be any justification to force the parties in the new action to repeat the discovery conducted in this case, including document production, interrogatories, and depositions. There is also a specific issue that requires the modification of the protective order now, instead of later. That is, because Synopsys claims all the names of its customers are trade secrets, the new action cannot even be filed without the requested modification of the protective order.

## II. <u>FACTS</u>

### 1. Early Events Related to the Remote Access Claims

On February 27, 2012, Dynetix served its First Set of Requests for Production (the "RFPs") and First Set of Interrogatories. See Dkt. No. 214-1, Ex. A. The RFPs request the license agreements between Synopsys and its customers and also the emails of Messrs. Gandhi and Seshadri. *Id.* at 8, 10.

On March 20, 2012, Dynetix served its Disclosure of Asserted Claims and Infringement Contentions Pursuant to Pat. L.R. 3.1 (the "Infringement Contentions"). Dkt. No. 214-1, Ex. B. Based on the publicly available information, the Disclosure asserts its parallel processing claims against VCS Multicore, which is defined by the Disclosure as "VCS with its multicore functionality." *Id.* at 1:17-18. The Disclosure contends as evidence of infringement that:

> The multicore function of VCS ("VCS Multicore" hereinafter) allows parallel processing of the verificaiton process using "the multi-core, multithreading [computer] architecture."

*Id.*, Claim Chart for Claim 1, Element 1.

For claims 19-23, which are related to remote access simulation and are thus referred hereto as the Remote Access Claims, the disclosed accused instrumentality is VCS Cloud based on publicly available information. *See* Dkt. No. 214-1, ¶ 3. Although Dynetix suspected that the normal VCS that Synopsys licensed to large companies may also practice the Remote Access Claims, Dynetix had no good-faith basis at the time to include the normal VCS as the infringing instrumentality for claims 19-23. *Id.* ¶ 3.

On March 28, 2012, Synopsys served its responses to the RFPs. *Id.* ¶ 4. Synopsys's counsel stated that it would produce the responsive documents on a "rolling production" basis. When asked about missing documents, counsel always said Synopsys had not finished the production yet. *Id.* Synopsys also fought hard not to disclose the names of its licensees and refused to produce any license agreements with its customers. Synopsys also sought a court order to enjoin Dynetix from seeking discovery regarding Synopsys's customers. *Id.*

On June 12, 2012, the Court denied Synopsys' motion to stay claims and discovery against the customers. Synopsys, however, still refused to produce the license agreements for several months until October 5, 2012. *Id.* ¶ 5. Synopsys did not produce any documents regarding VCS Cloud until late October. *Id.*

Between April and May 2012, Synopsys made three document productions of a total of 26,060 pages. *Id.* ¶ 3. After some time spent in setting up the document database and uploading the documents, sometime in May 2012, Dynetix started to review the documents. *Id.* ¶ 4. Toward the end of July 2012, some user guides were found that contain discussions that seem to indicate server

and client communications for the use of VCS. *Id.* ¶ 4. Counsel lacked the expertise to understand the document, however. *Id.* At the time, Dynetix did not have an expert consultant yet. Dynetix started to look for a technical expert in early May, but failed in several attempts. Although a classic simulation expert was retained in August 2012, he does not know anything about network and source code. Dr. Minesh Amin, who does understand such issues, was engaged on September 17, 2012. *Id.* On the same day, he was disclosed to Synopsys. *Id.*

Dynetix has been asking Synopsys to produce the license agreements with its customers since March 2012. At the beginning, Synopsys refused to produce the license agreements. After the Court denied its motion to stay customer discovery, Synopsys promised to produce the documents, but acted very slowly. When its 9th installment of rolling production was made on October 5, 2012, Dynetix's counsel was busy with preparing for the claim construction hearing scheduled on October 10, 2012. Li Decl. ¶ 6. Synopsys did not inform Dynetix that the 9th installment contained the license agreements that Dynetix had been urging it to produce. *Id.* Nobody looked at the documents until after the claim construction hearing. *Id.*

A few days after Synopsys withdrew its objections on October 3, 2012, Dr. Amin started working on the case. *Id.* ¶ 7. After the claim construction hearing, on or about October 12, 2012, he informed me that he believed that the user guide material (i.e., Amin Decl ISO Consol. Opp. to MSJs, Dkt. No. 168-2, Ex. 14.) shows the evidence that VCS technically allowed a user to access it remotely in a way, infringing the Remote Access Claims. *Id.* ¶ 7. The only issue left at the time was whether such remote access was under a normal VCS license or under VCS Cloud. On October 15, 2012, this issue was resolved because of the discovery of the license agreement with AMD which authorizes AMD under the normal VCS license to host VCS in servers to be accessed company-wide through remote access. *Id.* ¶ 7. Dynetix immediately started to meet and confer with Synopsys on the issue and filed the Motion for Leave to Amend Infringement Contentions (the "1st MFL") on October 23, 2012. *Id.* ¶ 8. On December 3, 2012, the Court denied the 1st MFL on the finding of lack of diligence on Dynetix's part.

### 2. Later Events Related to Partition Compile

On or about October 28, 2012, Dynetix served subpoenas on some major VCS customers, including Intel Corp. ("Intel") and Advanced Micro Devices ("AMD"), for documents and deposition. Intel, which is the largest customer of Synopsys, refused to produce any documents, which will soon be the subject of a motion to compel. A deposition of Intel was set up for February 22, 2013 in Portland, Oregon.

A few days before the scheduled Intel deposition, in the late afternoon of February 18, 2013, Synopsys produced 15,606 pages of emails that Dynetix has requested a year ago on February 27, 2012. *Id.* ¶ 11. Buried in these emails are thousands of pages of documents that are highly relevant to the Intel deposition. *Id.* Moreover, the production contained mysterious errors that prevented Dynetix from properly loading the production onto its database and delayed the review of the documents. *Id.* Despite all these, Dynetix was able to mobilize considerable efforts to find some relevant documents in time before the Intel deposition. *Id.* One document revealed a feature of VCS called Partition Compile that may actually use parallel processing, but was never included in the user manuals as a feature of the VCS Multicore. *Id.* During the Intel deposition, it was confirmed that Partition Compile uses multicore processing. *Id.*

After the deposition, Dynetix requested that Synopsys clarify whether Partition Compile is considered part of VCS Multicore. *Id.* ¶ 12. In a meet-and-confer on March 1, 2013, Synopsys stated that Partition Compile is not part of VCS Multicore and that it would oppose Dynetix's motion to amend the Disclosure to include Partition Compile. *Id.*

### 3. Events Related to the Requested Modification of the Protective Order

The customers of VCS are included in this lawsuit as Doe defendants. *See* Complaint, Dkt. No. 1. Upon the receipt of the license agreements in October 2012, Dynetix contemplated amending the complaint to name the customers, but decided against it because of the inevitable delay it would cause to the schedules of this case. *Id.* ¶ 13. The decision was made to sue the customers in a separate action later.

After the Court denied the 1st MFL, Dynetix's only option to assert the Remote Access Claims against anybody is through a separate action against the customers. Consequently, such an

action suddenly gained a certain degree of urgency. Dynetix then approached Synopsys to ask whether it would consider adding the Remote Access Claims back to the case in order to delay the suit against the customers, which Synopsys rejected. *Id.* ¶ 14. Synopsys reminded Dynetix that it could not use any information obtained in the present case for the new action against the customers. *Id.* Because Synopsys considers even the names of the customers to be confidential information, Dynetix has no choice but to ask this Court to modify the protective order to allow the filing of a lawsuit against VCS customers.

## III. ARGUMENT

### A. The Notice Function of the Infringement Contentions Requires the Adoption of the "Undue Delay" Standard for Determining the Motion for Leave to Amend Complaint

It is well established that "the Federal Rules require only notice pleading by the claimant" and the specific legal theories of the case must be "pinned down" through discovery. *O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006). A local patent rule may not "conflict with the spirit, if not the letter, of the notice pleading and broad discovery regime created by the Federal Rules." *Id.* at 1366.

The Pat. L.R. 3-6 (the "Local Rule") allows amendment of the Infringement Contentions with a showing of good cause, which includes, among other things, "the recent discovery of nonpublic information about the Accused Instrumentality." In *O2*, the Federal Circuit affirmed the Northern District's interpretation of the "good cause" requirement to include a showing of diligence. *O2 Micro Int'l, Ltd.*, 467 F.3d at 1366. *O2*, however, did not delineate what constitutes a lack of diligence because it dealt with an extreme fact pattern. The issue in that case was whether the plaintiff should be allowed to amend its infringement contentions to include an "open lamp" infringement theory. *Id.* at 1361. It was established as a matter of fact that during discovery the plaintiff was provided with the "documents identifying the open lamp pin as early as March 2002." *Id.* at 1360. The plaintiff claimed that it did not realize the open lamp theory until it deposed an employee of the defendant, James Moyer, on February 24-25, 2003. *Id.* Yet, the plaintiff filed its motion for leave to amend the infringement contentions on June 6, "over three months after the

Moyer deposition," as observed by the court. *Id.* at 1361. By then, the opening expert report had been served. *Id.* The fact pattern of *O2* is thus inapplicable to the instant case.

There is no question that an overly stringent interpretation of "good cause" would contradict the notice pleading rule. In many patent cases such as the instant one, plaintiff has no way of knowing how the products work without conducting discovery. In cases like the present one where complicated technology is involved, an extensive amount of discovery has to be conducted before the true meaning of the products can be revealed. It is necessary, therefore, to turn to other areas of the case law for a proper understanding of what constitutes "diligence" under the legal term "good cause," based on the notice pleading principle of the federal rules. The laws under Rule 15 for amending complaint seems to be a good starting point because of the similar functionality of complaint for notice pleading.

For amending a complaint, under the Federal Rules of Civil Procedure, leave must be "freely" given "when justice so requires." Fed. R. Civ. P. 15(a)(2). The drafter of the Rule makes it clear that this liberal standard for amending a complaint was adopted to avoid unnecessary filing of new actions. *See* Fed. R. Civ. P. 15, Notes of Advisory Committee on 1963 amendments

> (Thus plaintiffs have sometimes been needlessly remitted to the difficulties of commencing a new action even though events occurring after the commencement of the original action have made clear the right to relief.)

The liberal standard is also deeply rooted in the general policy of deciding cases on the merits. *See Phillips v. Borough of Keyport*, 179 F.R.D. 140, 143 (D.N.J. 1998)

> (Federal Rule of Civil Procedure 15(a) codifies a liberal approach to the amendment of pleadings to promote the policy of deciding cases on the merits, instead of on technicalities. See 6 CHARLES A. WRIGHT, ARTHUR R. MILLER, & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 1471, at 502-507 (1990))

The reason to deny a motion for leave to amend under Rule 15 includes "undue delay," "bad faith," and "undue prejudice." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. Cal. 2003). The "diligence" requirement under the Patent Local Rules is comparable to the "undue delay" element under Rule 15, in that it measures how soon the plaintiff seeks the amendment after it learns the facts that precipitate the amendment.

Thus, to truly respect the notice pleading standard of the federal rules, the "diligence" element

under the Local Rule should be interpreted similarly as the "undue delay" standard under Rule 15. Here, the legal threshold is very high for finding "undue delay." "Courts may decline to grant leave to amend only if there is **strong evidence** of undue delay" and other facts. *Sonoma County Ass'n of Retired Emples. v. Sonoma County*, 2013 U.S. App. LEXIS 3856 (9th Cir. 2013) (emphasis added). Delay, without a proof of prejudice, is insufficient to deny leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. Cal. 2003); *Hall v. City of L.A.*, 697 F.3d 1059, 1073 (9th Cir. Cal. 2012) (reversing order denying leave to amend despite a 2-year delay because "it is questionable whether amendment would have required additional discovery, given the extensive discovery the parties had conducted already."); *Abels v. JBC Legal Group, P.C.*, 229 F.R.D. 152, 156 (N.D. Cal. 2005) (allowing leave to amend despite a 10-month delay because the discovery deadline had not yet passed).

For whatever reasons, the *O2* court never discussed the implication of Rule 15 on the Local Rule.[1] Without examining the "good cause" requirement in the light of Rule 15, however, the Local Rule appears to be an anti-notice pleading rule in a pro-defendant way. Unless the infringing instrumentality can be purchased on the open market, it is seldom the case where the plaintiff would know all the infringing features in the early stage of the litigation. In light of this fact, to interpret the "good cause" requirement of the Local Rule rigidly to exclude infringing features that can only be revealed through extensive discovery would indeed contradict the spirit of the notice pleading rule. That is why the "undue delay" jurisprudence of Rule 15 should be the guiding principle for interpreting the good cause requirement of the Local Rule.

The *O2* court did discuss case laws interpreting Rule 16's "good cause" requirement for amending the case management schedule. *See O2 Micro Int'l, Ltd.*, 467 F.3d at 1366 (citing Ninth Circuit law regarding good cause for modification of a case management order). Rule 16, however, does not apply in this case. The Case Management Conference Order in this case does not specify a deadline for amending either the complaint or the Infringement Contentions, and thus there is no

[1] It is noted that the extreme fact pattern in O2 would have passed muster even under the Rule 15 standard, where the plaintiff waited over a year after it received the documents showing the Open Lamp fact and more than 3 months after the Moyer deposition, until after it had already served the opening expert report.

issue of amending the case schedule.

More importantly, as discussed below, regardless of whether Rule 15 or Rule 16 standards should apply, the facts of this case show the requisite good cause for granting leave to amend the Infringement Contentions.

**B. Leave to Amend Should Be Granted for the Partition Compile Feature**

There is no undue delay at all regarding the Partition Compile feature. Although the feature is somewhat described in the user manual, there is no clear indication in the user manual that it uses parallel processing. Li Decl. ¶ 15. It is also a small feature buried in the volumes of the User Guide. The source code of VCS is so voluminous that it was impossible for Dynetix's expert to just zoom in on any feature without a reason. *Id.* ¶ 16. That reason came on February 20, 2013 during the review of 15,606 pages of emails produced by Synopsys on February 18, 2013. *Id.* ¶ 10. Some of the emails showed that the Partition Compile was using parallel processing and is closely related to the hotly-disputed issue of autopartitioning. *Id.* Ex. C, p. 3. This fact was confirmed on February 22, 2013 during Intel's deposition. *Id.* Right after the deposition, on February 25, Dynetix asked Synopsys to clarify whether or not Partition Compile is considered part of VCS Multicore. *Id.* ¶ 12. The instant motion is filed only a few days after Dynetix had learned during a meet-and-confer that Synopsys would not stipulate to a leave to amend and would oppose any motion in that regard. *Id.* Thus, there is no delay at all, let alone undue delay.

It is true that the motion is being brought nearly a year after the Infringement Contentions were initially served. The time lag in seeking to amend the Infringement Contentions is caused by the normal course of discovery on one hand and Synopsys's peculiar way of making discovery on the other. The peculiarity of Synopsys's discovery practice has been to produce a vague document earlier (e.g., the User Guide), but withhold crucial documents (e.g., the emails) as long as it could. Regardless of whether it was on purpose, the result of the discovery practice is to set up nicely for Synopsys to oppose any attempt to amend the Infringement Contentions based on the delay from the

production of the vague documents.[2] The fact of the matter is, these vague user guides, even assuming that they are readily word by word which is impossible to do, did not give Dynetix any reason to believe that Partition Compile is a parallel simulation feature that should be explicitly included as an accused instrumentality. Because of its close relationship with VCS Multicore, it would not have been clear that this feature is not part of VCS Multicore, as Synopsys claims.

As a matter of fact, as soon as Synopsys produced the emails that pinpointed the importance of Partition Compile, Dynetix conducted a deposition and reviewed the specific source code to enable it to properly conclude that this feature should be part of the accused infringing features of VCS. Li Decl. ¶ 17. From the production of the emails, which was on February 18, to the filing of the instant motion, which is March 5, there were literally only two weeks in between. In the two weeks, Dynetix reviewed the bulk of the 15,000 pages of emails, conducted the Intel deposition, reviewed the source code, and conducted a meet-and-confer with Synopsys. Dynetix thus has acted diligently no matter what standard this Court applies.

There is no prejudice to Synopsys if the leave to amend is granted. The current version of the Infringement Contentions has already provided sufficient notice that features like Partition Compile are included in the accused devices. The accused device in the current Infringement Contentions is VCS Multicore, a term that is defined more broadly than Synopsys's "VCS Multicore" product. The phrase as it is used in the Contentions includes any parallel processing of the verification process using "the multi-core, multithreading [computer] architecture." Dkt. No. 214-1, Ex. B., Claim Chart for Claim 1, Element 1. This definition of VCS Multicore includes the parallel processing feature of Partition Compile. Thus, strictly speaking, a general notice has already been given through the original Infringement Contentions that the accused instrumentality includes product features such as Partition Compile. The amendment sought merely makes it absolutely clear that such is the case. As shown in the draft amended contentions, Li Decl. Ex. E, the changes are minimal as to the Partition Compile feature because the broad descriptions in many instances have already covered the feature. Thus, if Synopsys has chosen to ignore Partition Compile during the claim construction, while

---

[2] In the case of the Remote Access Claim, it is the alleged release into the public domain of a license guideline that is being used as the "prop" for staging an undue delay.

knowing that it would be discovered later, it could only have itself to blame.

In fact, Synopsys did make a failed claim construction argument with Partition Compile in mind. Synopsys spends a considerable amount of time during the claim construction proceeding to argue about whether the term "event" should be limited to gate and signal event. This argument, in retrospect, is an attempt to exclude the compiling events in Partition Compile from the scope of the claim. Dkt. No. 98 at 26.

Thus, the motion for leave to amend the Infringement Contentions regarding the Partition Compile feature should be granted.

### C. The Court Should Reconsider the Prior Order regarding the Remote Access Claims

This Court's prior order denying leave to amend the Infringement Contentions regarding the Remote Access claim (the "Prior Order") is based on the premise that Dynetix could have discovered the generic licensing documents (collectively the "Generic Licensing Guide") that are alleged to be on Synopsys's website since 2009 and that the Generic Licensing Guide was sufficient for Dynetix to include VCS normal licensed use, in addition to VCS Cloud, as the accused device for the Remote Access Claims.

Dynetix asks this Court to reconsider the Prior Order for the following reasons:

First¸ Dynetix's diligent pre-litigation search did not turn up the Generic Licensing Guide, which presents an issue of disputed facts as to whether such licensing instructions were actually on Synopsys's website, instead of being placed there after the lawsuit was filed. There is no competent evidence proving that such licensing instructions were actually placed on the website before the lawsuit was filed. Thus, it is a disputed issue of fact whether Dynetix should be imputed with the information stated in the documents.

Second, even assuming that Dynetix should be imputed with the information in the Generic Licensing Guide, Dynetix still would not have had sufficient evidence to assert the Remote Access Claims against VCS Multicore, until October 2012. The Generic Licensing Guide does not contain any technical information to allow Synopsys to draw a conclusion as to whether the remote use of VCS meets each and every element of the Remote Access Claims. Dynetix could not have

constructed a claim chart against VCS remote access based on the Generic Licensing Guide. The Prior Order does not address this issue at all.[3]

In fact, the necessary technical information for asserting the Remote Access Claims against VCS was not obtained until October 2012, as shown by the following sequence of events:

| Date | Event |
|---|---|
| Before 12/05/2011 | Dynetix conducted a search on the Internet for VCS-related publications and did not find any documents on whether VCS could be used through local area networks or whether the Remote Access Claims could be asserted against VCS, as opposed to VCS Cloud. |
| 3/20/2012 | Dynetix served the Infringement Contentions, asserting the Remote Access Claims against VCS Cloud only. |
| 4/17-5/23/2012 | Synopsys produced its first 3 installments of documents with a total of 26,060 pages. (Li Decl. ¶ 3) |
| ~5/25/2012 | After a short delay due to the setting up of the database hosting the documents, Dynetix started to review the first 3 installments of documents produced by Synopsys. (Li Decl. ¶ 4) |
| ~7/30/2012 | Dynetix's counsel found a part of VCS user guides that seemed to suggest remote access through Local Area Networks. But the description was rather vague and technical. It was not clear whether the requirements of the Remote Access Claims can be met. (Li Decl. ¶ 4) |
| 9/17/2012 | Dynetix signed up Dr. Amin as its expert consultant and immediately disclosed Dr. Amin to Synopsys. (Li Decl. Ex. A) This was the result of a search effort starting from early May 2012. (Li Decl. ¶ 4) |
| 9/26/2012 | Synopsys informed Dynetix that it objected to Dr. Amin because of his former employment with Synopsys. (Li Decl. Ex. A) |
| 9/28/2012 | The Court held a telephonic hearing over Synopsys's objection to Dr. Amin. |
| 10/3/2012 | Synopsys withdrew its objection to Dr. Amin. (Li Decl. Ex. B) |
| 10/5/2012 | Synopsys produced its 9th installment of rolling production, which contained many license agreements with VCS customers. (Li Decl. ¶ 6) |
| ~10/12/2012 | Dr. Amin determined that there was sufficient technical evidence to the Remote Access Claims against VCS Multicore. (Li Decl. ¶ 7) |
| ~10/15/2012 | Dynetix counsel's review of the license agreement confirmed that Synopsys's normal license allowed enterprise licensees to access VCS remotely through internal networks. (Li Decl. ¶ 7) |
| 10/17/2012 | Dynetix requests a stipulation from Synopsys for leave to amend the Infringement Contentions to assert the Remote Access Claims against the |

[3] This point was not discussed in the early briefing, but was raised during the oral argument.

| | |
|---|---|
| | normal VCS's remote access function. (Li Decl. ¶ 8) |
| 10/23/2012 | Dynetix filed its first motion for leave to amend the Infringement Contentions. (Li Decl. ¶ 8) |

As shown by the above sequence of events, the time lag between the first production of documents by Synopsys (i.e., 4/17/2012) and the filing of the 1st MFL (i.e., 10/23/2012) was not caused by a lack of diligence. Dynetix acted diligently in pursuing the remote access claims against the normal license of VCS.

The Prior Order also finds that there was prejudice to Synopsys because of the delay. There is no evidence of any prejudice, other than the general assertion by Synopsys. However, the criteria here cannot be any prejudice, but should be "undue prejudice." *Eminence Capital, LLC*, 316 F.3d at 1052. Otherwise, the Local Rule would swallow the liberal standard of Rule 15 and the basic principle of notice pleading. The focus should be whether any new discovery needs to be conducted because of the delay, instead of a vague contention of the legal issue of claim construction. *Abels v. JBC Legal Group, P.C.*, 229 F.R.D. 152, 156 (N.D. Cal. 2005) (allowing leave to amend despite a 10-month delay because the discovery deadline had not yet passed). There is certainly no showing of any new discovery that needs to be conducted because of the delay. In fact, by the time the 1st MFL was determined, there was barely any significant discovery that had been done.

Dynetix also has to set the record straight as to the Prior Order's inference of "gamesmanship" on Dynetix's part. Dkt. No. 166 at 6. The Court found fault with Dynetix for not mentioning the remote access feature of VCS during the October 10, 2012 claim construction hearing. This finding misunderstands the facts. Although the license agreements were produced, without any fanfare or notice, on October 5, 2012, counsel at the time was busy preparing for the claim construction hearing and did not start looking at the documents until after the hearing, and did not find the evidence of remote access license until around October 15, 2012. Li Decl. ¶¶ 6-7. If there was any suspicion of gamesmanship, it should fall on Synopsys who produced the crucial documents, which have been repeatedly demanded for several months, a few days before the claim construction hearing. As always, the timing of the production seemed to be designed to allow Synopsys to make an argument of delay or prejudice without providing Dynetix any realistic chance of reviewing the documents before the hearing.

Further, Synopsys only withdrew its objection to Dr. Amin on October 3, 2012. *Id.* ¶ 5. Dr. Amin started working in this case a few days after October 3 and did not find the technical evidence for the VCS remote access until after the claim construction hearing. *Id.* ¶ 6.

Moreover, Synopsys had the notice of Dynetix's intent or suspicions many months before the claim construction hearing. In a brief submitted by Dynetix on May 11, 2012, in opposition to Synopsys's motion to stay customer discovery, Dynetix stated, as a reason to seek customer discovery, that the Remote Access Claims might be infringed "by the customer's installing VCS on a server to allow its engineers to access the software remotely, which would be a <u>normal licensed use</u>." Dkt No. 46, 3:8-13 (emphasis added). Particularly, this remote access feature was contrasted with VCS Cloud in the same paragraph. *Id.* Thus, Dynetix has never intended to hide its plan of seeking evidence to prove infringement of the Remote Access Claims by the normal VCS licensees, in addition to VCS Cloud. Contrary to the Prior Order's finding, the timing of the previous motion for leave was dictated by the availability of evidence, including Dr. Amin's expert opinion interpreting the technical information. Li Decl. ¶¶ 6-8. It had nothing to do with the summary judgment motions that Synopsys planned to file. The inference of Dynetix's gamesmanship on this issue is thus unsupported and unfair.

**D. The Protective Order Should Be Modified**

The issue here is whether Dynetix should be allowed to file a lawsuit against Synopsys's customers using the information obtained from this case. The controlling factor on this issue should be the fact that substantively the lawsuit against the customers is part of this case, since the customers are listed as Doe defendants. The main reason that a new action should be filed against the customers is purely procedural: It is impossible to maintain the case schedule if the customers are added to the case because of the share number of them involved. Another consideration for filing a new lawsuit against the customers is judicial economy because resolution of the instant case would drastically simplify the action against the customers.

To forbid the use of information of this case in the customer lawsuit would be a bureaucratic decision of little economic sense. All the product information produced in this case by Synopsys and

the customer information produced through customer subpoenas would have to be wasted. Documents must be reproduced, interrogatories re-propounded, and depositions retaken. Further, as Synopsys claims that even the identities of its customers are its trade secrets, without the requested modification, the customer lawsuit in theory cannot even be filed.

For these reasons, the Court should modify the Protective Order to allow all the information obtained through discovery in this case to be used in the upcoming action against VCS customers based on the '898 patent.

## IV. CONCLUSION

For the foregoing reasons, Dynetix's motion for leave to amend its infringement contentions should be granted.

DATED: March 5, 2013

**LILAW INC.**
**ATTORNEYS FOR PLAINTIFF DYNETIX DESIGN SOLUTIONS, INC.**

By /s/ J. James Li

J. James Li, Ph.D.