United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DYNETIX DESIGN SOLUTIONS INC., a California corporation,<br><br>Plaintiff,<br>v.<br><br>SYNOPSYS INC., a Delaware corporation,<br><br>Defendant. | Case No.: CV 11-05973 PSG<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION**<br><br>**(Re: Docket No. 341)** |

In a motion for reconsideration of this court's March 31, 2013 order granting-in-part Defendant Synopsys' motion for summary judgment, Plaintiff Dynetix Design Solutions Inc. ("Dynetix") urges the court to revisit its rulings on a variety of discrete issues. Dynetix also requests sanctions. In the interest of time and in light of the rapidly approaching trial date, the court will dispense with a full recitation of the full background and applicable legal standards of this dispute. At this point on the lengthy docket, that background and those standards are well-known not only to the parties but also anyone else with even a passing interest in this case.

Dynetix first raises an issue regarding the claim construction of two related limitations of U.S Patent No. 6,466,898 ("the '898 Patent"):  "automatically detecting the number of microprocessors (CPUs) available on the multiprocessor platform to create a master thread and a plurality of slave threads" and "creating a master thread and a plurality of slave threads, based on the number of available CPUs on the microprocessor platform, prior to the start of simulation."  The former limitation is in Claim 1 of the '898 Patent, the latter in claims 36 and 45.  For the sake of brevity, Dynetix characterizes the separate requirements of these limitations as "CPU Auto-Detection" and "CPU-based Thread Creation."  Dynetix argues that the court erred in construing both claims as including both CPU Auto-Detection and CPU-based Thread Creation.  According to Dynetix, claims 36 and 45 omit any CPU-Auto-Detection requirement, while Claim 1 omits any requirement of a CPU-based Thread Creation.  In support of its position regarding Claim 1, Dynetix highlights the proximity of the language "as according to the number of CPUs on the multiprocessor platform" immediately following the requirement of speedup linearity to superlinearity, not the creation of threads, as well as specific requirement of a CPU-based Thread Creation in claim 5, which depends on claim 1.

Synopsys responds simply by noting that Dynetix did not secure leave from the court for reconsideration of this issue as is required by Civ. L.R. 7-9.  Instead, leave was directed specifically and only to the issue of the propriety of the summary judgment that the accused ALP feature does not practice these disputed limitations.

Synopsys is quite right that Dynetix has proceeded without securing appropriate leave to challenge the issued construction.  On that basis alone, Dynetix's request for relief is unwarranted. But Dynetix's request must be rejected for additional reasons.  As an initial matter, Dynetix does not explain why it failed to raise these arguments in either its claim construction briefing or its briefing on Synopsys' summary judgment motion.  With respect to claims 36 and 45, their plain

Case No.: C 11-05973 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

United States District Court
For the Northern District of California

language requires that the master and slave threads are "based on the number of available CPUs on the microprocessor platform."  Nothing in this or any other language of the claims suggests to the ordinarily skilled artisan how the number of available CPUs could be known other than by autodetection, and Dynetix identifies no such language.   To the extent there is any doubt, one of ordinary skill in the art could and would turn to the written description, and in particular the "Detailed Description of the Invention."  That description is explicit that the simulator disclosed in the '898 Patent knows how many threads to allocate at startup, without any input.[1]  How else could it do this if the simulator does not detect how many CPUs are available on the multiprocessor platform?  As for claim 1, the Dynetix overlooks that while the "as according to the number of CPUs on the multiprocessor platform" language may be placed immediately following the speedup requirement, it naturally reads to modify the entirety of the limitation, including the thread creation requirement earlier in that limitation.  As for the application of the doctrine of claim differentiation with Claim 5, even if that doctrine was paramount, which it is not,[2] Dynetix ignores other distinctions that satisfy that doctrine.  For example, in Claim 5 but not in Claim 1, the thread creation is made explicitly prior to simulation (as is explicit in claims 36 and 45).  In addition, Claim 5 adds the following requirements:

> (b) keeping the slave threads in a sleeping mode while processing current events by the master slave itself during a simulation to conserve overhead in synchronizing the concurrent execution of the slave threads and waking up the slave threads by the master thread only when there are sufficient number of events to justify the use of slave threads;

> (c) assigning events to the master and slave threads such that the master and slave threads all process nearly the same number of events concurrently to ensure load balancing;

> (d) providing a per-thread specific event queue to store future events and a fanout queue to store zero-delay events;

---

[1] *See* '898 Patent at 17:51-54.

[2] *See, e.g., Applied Concepts, Inc. v. Olympia Indus., Inc.,* 15 F. App'x 793, 799 (Fed. Cir. 2001) (holding that the doctrine of claim differentiation is not a "hard and fast rule of construction" and cannot be used to "broaden claims beyond their correct scope").

Case No.: C 11-05973 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

(e) assigning a thread ID to each new event being put into a thread event or a fanout queue to ensure that the new event will be processed only once in the presence of a plurality of threads processing the same event concurrently;

(f) synchronizing between the master thread and the slave threads to put the master thread awaiting until all the slave threads finish processing assigned events and go back to the sleep mode; and

(g) checking and repeating the steps of (b)—(e) if new events exist in the thread specific fanout or otherwise advancing the simulation time to a next event pending time.

Turning to the matter for which Dynetix properly sought leave to seek reconsideration, Dynetix argues that evidence both previously submitted and newly uncovered creates a triable issue regarding the ALP's practice of both CPU Auto-Detection and CPU-Based Thread Creation. The previously submitted evidence includes the so-called "White Paper" and "Tera Scale Summit" presentations, while the new evidence is a 2007 design specification for the ALP backbone ("ALP Specification").

With respect to the White Paper and Tera Scale Summit presentations, the court must reiterate that in its papers opposing Synopsys' summary judgment motion, Dynetix offered nothing from these materials or any other about ALP at all.  Instead, Dynetix and its expert focused exclusively on the separately accused DLP feature.  In response to a motion for summary judgment, a party must do more than assume the court will ferret through the record in search of evidence giving rise to a triable issue.  "Judges are not like pigs, hunting for truffles buried in briefs."[3]  A party must instead affirmatively present such evidence.  This Dynetix simply did not do.  But even if this were not the case, a review of these materials does not improve Dynetix's position.  Nothing in these high-level marketing or presentation documents speaks to the specific practice in ALP of creating master and slave threads based on the number of available CPUs automatically detected, as the claims require.

---

[3] *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

Case No.: C 11-05973 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

As for the ALP Specification, an outline of possible features issued two years before the release of ALP in 2009, that document is itself similarly high-level and does not speak specifically to creation of both master and slave threads based on an automatic detection of available CPUs. Dynetix alternatively urges that the specification inspired the additional investigation of ALP source code that shows that the claimed feature was included in the product as released.  But whatever Dynetix's expert may conclude to avoid summary judgment,[4] a review of the code itself shows that it does not automatically detect the number of microprocessors available on the user's microprocessor platform to create one thread for each available processor.[5]  It also does not create a thread for each available CPU on the multiprocessor platform.[6]  Rather, the functions in these source code files—"pvcsSelectCPUForALP," "pvcsSetALPAffinity," and "pvcsAffinitySetup" – simply bind the threads created by ALP to processors so that the threads will not move from processor to processor during simulation.[7]  Dynetix's motion for reconsideration is therefore DENIED.

Dynetix further requests sanctions.  Because its motion for sanctions is predicated on allegations of willful discovery abuse by Synopsys, and Dynetix fails to establish such willfulness, this request also is DENIED.

**IT IS SO ORDERED.**

Dated: July 11, 2013

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[4] _See Telemac Cellular Corp. v. Topp Telecom, Inc.,_ 247 F.3d 1316, 1329 (Fed. Cir. 2001) (citation omitted) ("[b]road conclusory statements offered by [one party's] experts are not evidence and are not sufficient to establish a genuine issue of material fact").

[5] _See_ Docket No. 355, Koslacz Decl. ¶ 7.

[6] _See id._

[7] _See id._

5

Case No.: C 11-05973 PSG
ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION