CHRIS R. OTTENWELLER (STATE BAR NO. 73649)
cottenweller@orrick.com
I. NEEL CHATTERJEE (STATE BAR NO. 173985)
nchatterjee@orrick.com
JASON K. YU (STATE BAR NO. 274215)
jasonyu@orrick.com
ANDREW S. ONG (STATE BAR NO. 267889)
aong@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, California 94025
Telephone:     +1-650-614-7400
Facsimile:     +1-650-614-7401

BENJAMIN J. HOFILEÑA (STATE BAR NO. 227117)
bhofilena@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, California  90017
Telephone:     +1-213-629-2020
Facsimile:     +1-213-612-2499

Attorneys for Defendant and Counterclaimant,
SYNOPSYS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DYNETIX DESIGN SOLUTIONS, INC., a
California corporation,

               Plaintiff,

     v.

SYNOPSYS, INC., a Delaware corporation,
and DOES 1-50,

               Defendant.

SYNOPSYS, INC., a Delaware corporation,

               Counterclaim Plaintiff,

     v.

DYNETIX DESIGN SOLUTIONS, INC., a
California corporation,

               Counterclaim Defendant.

Case No. 5:11-cv-05973-PSG

**SYNOPSYS, INC.'S REPLY IN
SUPPORT OF MOTION TO STRIKE
INFRINGEMENT EXPERT REPORT
OF DR. MINESH AMIN AND
EXCLUDE EXPERT TESTIMONY**

## I.    **INTRODUCTION**

Dr. Amin's opinions are classic examples of irrelevant, unreliable, and speculative testimony that would serve only to mislead and confuse a jury.  The Court, in its gatekeeping role, has an obligation to exclude such opinions for the following reasons:

1.    Dynetix concedes that Dr. Amin did not apply the Court's constructions for many of his literal infringement opinions, and argues that Dr. Amin can present "alternative" opinions under the doctrine of equivalents.  But those so-called alternative opinions also contradict the Court's claim constructions.  Instead of addressing the elements of the Court's construction under the doctrine of equivalents, Dr. Amin simply ignores them.  The doctrine of equivalents does not allow a patentee to present infringement arguments based on claim constructions that are not adopted by the Court.[1]

2.    Dynetix admits that Dr. Amin did not calculate his test results based on "available" processors as required by the Court's claim construction.  All of his results are sub-linear under the Court's construction.  Even under Dr. Amin's alternative approach, in which he defines speedup based on the number of processors "used" instead of processors "available," Dr. Amin's results are still sub-linear.  Dr. Amin admittedly did not take into account the core on which the "master" thread operated.  This clearly skewed his results, turning sub-linear times into linear or super-linear times.  If Dr. Amin had counted the master thread, as the Court's claim construction requires, his results would be sub-linear.  Dynetix does not contest this point.

3.    Dr. Amin has concocted an infringement theory which he coins "Hidden Autopartitioning," a term not found in any of the evidence.  This theory is based on complete conjecture.  Dynetix concedes that (1) there is no description of any such functionality in Synopsys's technical documents, (2) Dr. Amin could not force VCS to execute such a functionality during his months of testing, and (3) Dr. Amin could not identify any source code

---

[1] Synopsys will also be separately filing motions in limine to exclude Dr. Amin's doctrine of equivalents arguments on the grounds that Dynetix did not disclose any such theories during discovery, and because such arguments are barred by the doctrines of prosecution history estoppel and claim vitiation.

that actually executes such functionality. Nothing in the record supports this speculative theory of infringement.

## II. DR. AMIN'S INFRINGEMENT OPINIONS ARE BASED ON INCORRECT CLAIM CONSTRUCTIONS AND SHOULD BE EXCLUDED.

In at least four cases dealing with key limitations, Dr. Amin deviated from the claim constructions and simply purported to be offering "doctrine of equivalents" opinions. But a patentee may not disregard elements of a claim construction under the guise of the doctrine of equivalents. *See, e.g.*, *Insituform Technologies, Inc. v. Cat Contracting, Inc.*, 99 F.3d 1098, 1109 (Fed. Cir. 1996) (doctrine of equivalents analysis must be based on the proper claim construction); *Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996) ("These evidentiary requirements assure that the fact-finder does not, 'under the guise of applying the doctrine of equivalents, erase a plethora of meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement.'"); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1017 (Fed. Cir. 2006) ("It is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety"). A doctrine of equivalents argument must be faithful to the Court's construction of claim terms. Dr. Amin's opinions on the following terms must be struck as irrelevant and unreliable.

### A. Linear to Super-Linear Scalable Performance Speedup.

The only evidence Dr. Amin cites in his report in support of the opinion that DLP achieves linear to super-linear performance speedup are the results from his own testing. But these results are not based on the Court's claim construction of this key term, which Dynetix generally concedes. Opp'n at 13 ("[I]f this Court is to maintain its claim construction . . . much of the performance speedup would have to be considered sublinear").

Dynetix argues, however, that the doctrine of equivalents gives it leeway to deviate from the claim construction. For example, Dynetix argues that Dr. Amin may testify to a jury that sub-linear results are "equivalent" to super-linear results because the results are close. *Id.* Not only is that an undisclosed opinion, it is legally impermissible because it eliminates a claim limitation.

*See DePuy Spine,* 469 F.3d at 1017. Linear means just what the Court says it means, not something less or different. All of Dr. Amin's opinions on the linear to super-linear limitations should but be struck as legally irrelevant.

## B.     Creating a Master Thread and A Plurality of Slave Threads

Dr. Amin also proffers a claim construction for the limitation "creating a master thread and a plurality of slave threads" that is inconsistent with the Court's construction. The Court's construction expressly requires "creating one thread for each processor" and executing each thread on its own processors. Dkt. No. 435-4 (Excerpts from Claim Construction Hearing). In contrast, Dr. Amin repeatedly states that this is not required by the claim limitation. Dkt. No. 435-1, Amin Rept., ¶ 36 ("Note that the claim does not require the usage of all the available CPUs"); *Id.*, ¶ 37 (same); *Id.*, ¶ 162 (The claim element "does not require each available CPU to have its own thread.").

Notwithstanding the fact that he provides his own construction for this limitation, Dynetix argues that Dr. Amin applies the Court's construction in opining on literal infringement. Opp'n at 6. Specifically, Dynetix argues that Dr. Amin's opinion is that VCS infringes under "any claim construction," because he did not identify which construction he was applying.[2] *Id.* But the only construction that Dr. Amin identifies when opining on literal infringement is his own. *See* Dkt. No. 435-1, Amin Rept., ¶ 151. Moreover, Dr. Amin's opinion conflicts with the Court's construction because DLP does not create one thread per processor based on the number of processors. Rather, it only sets a maximum number of threads based on the value N. Dr. Amin never opines that DLP will create exactly one thread per processor or execute each of those threads on their own processor, which is required by the Court's construction. *Id.*, ¶¶ 150-162.

---

[2] Dynetix's argument makes no sense. Dr. Amin's failure to identify which claim construction he relied upon is, on its own, grounds to strike his opinion. It renders the opinion unhelpful to the jury in violation of Fed. R. Evid. 702, it fails to disclose the "basis and reasons" for Dr. Amin's opinion, in violation of Fed. R. Civ. P. 26(a)(2)(B)(i). *DataQuill Ltd v. Handspring, Inc.*, Case No. 01-c-4635, 2003 WL 737785, *4 (N.D. Ill Feb. 28, 2003) (granting motion to strike expert report under Rules 702 and 26(a)(2)(B) in part because it was not clear what or whose interpretation of the claims the expert applied in his analysis and would therefore not assist the trier of fact under Rule 702, and also because he failed to state his opinion under Rule 26(a)(2)(B)) (cited by *Oxford Gene Technology Ltd. v. Mergen Ltd.*, 345 F.Supp.2d 431, 436 (D. Del. 2004) (same)).

Dynetix argues that Dr. Amin at least applied the Court's construction in opining on the doctrine of equivalents, but Dr. Amin actually applies his own construction again. *Id.*, ¶¶ 156-162. Notably, Dr. Amin again fails to acknowledge how VCS performs the equivalent of (1) creating one thread per processor or (2) executing each thread on its own processor. Instead, Dr. Amin states that he did not need to analyze these elements because they are not a part of the claim. *Id.*, ¶ 162 ("The Concurrency-1 element does not require each available CPU to have its own thread. Neither the plain meaning nor the intrinsic evidence requires a simulation to use all available CPUs"). But the Court's claim construction requires one thread per processor. As discussed above, Dr. Amin cannot omit elements of the Court's claim construction and claim infringement under the guise of a doctrine of equivalents argument. *DePuy Spine*, 469 F.3d at 1017; *Insituform*, 99 F.3d at 1109.

### C.  Multithreaded Simulation

Dr. Amin's opinion that the "parallel compile" feature of VCS infringes the asserted claims is inconsistent with the Court's construction for "multithreaded simulation." The Court's construction dictates that "multithreaded simulation" requires the "simulation of circuit functionalities." Dkt. No. 435-4 (Claim Construction Excerpts) at 174. This precludes threads that are used solely for compilation, like the threads created by parallel compile. For example, pursuant to the Court's construction, claim 1 requires "creat[ing] a master thread and a plurality of slave threads <u>for concurrent execution of the [simulation of circuit functionalities]</u>." Dkt. No. 435-3 ('898 Patent at Claim 1) (emphasis added). Claims 36 and 45 similarly require that the threads perform tasks that only occur during the simulation of circuit functionalities, *i.e.*, after compiling is complete. This includes being assigned event queues and processing signals states. *Id.* at claims 36 and 45.

Parallel compile only creates threads for compiling and therefore does not meet these limitations. Dr. Amin admits that the threads created by parallel compile terminate before any simulation of circuit functionalities occurs. Amin Rept., ¶ 178, Amin Dep. Tr. at 281:16-21 ("These threads, yes, they do terminate before runtime starts"). They do not perform the simulation of circuit functionalities, they are not assigned event queues, and they do not process

signal states. Dr. Amin's opinions are simply inconsistent with the Court's constructions. *See* Dkt. No. 435-1, Amin Rept., ¶¶ 142, 152, 178.

### D. Preexamining Each User-Specified HDL Source File

Dr. Amin's opinions that the "semantic check" in VCS meets the "preexamining" element of Claim 1 are also inconsistent with the Court's constructions. Dynetix argues that Dr. Amin applies the Court's construction in paragraph 82 of his report, but that is not the case. Dr. Amin addresses some limitations from the Court's construction, but still fails to apply the Court's *full* construction. Most importantly, the Court found that "preexamining" requires that the examining be done "before compiling." Dkt. No. 435-4 (excerpts from claim construction hearing). In contrast, the "semantic check" that Dr. Amin refers to occurs *during* compiling. Syn. Mot. at 12.[3]

Dynetix also argues that Dr. Amin applies the Court's construction in opining on the doctrine of equivalents in paragraph 83, but Dr. Amin again omits this key element of the Court's construction. Dkt. No. 435-1, Amin Rept., ¶ 83. Dr. Amin provides no explanation of how something that occurs during compilation is equivalent to something that occurs prior to simulation. Dynetix argues that these two are equivalent in its opposition (Opp'n at 11), but Dr. Amin provides no such opinion. Dkt. No 435-1, Amin Rept., ¶ 83. Dr. Amin is simply trying to eliminate a key limitation of the Court's construction under the guise of a doctrine of equivalents argument. *Id.* ("If for some reason the 'check' function does not meet the 'pre-examining' element literally, it at least meets it under the doctrine of equivalents."). Because Dr. Amin's opinion is inconsistent with this key element of the Court's construction, his opinion is irrelevant and should be found inadmissible.

### III. DR. AMIN'S TESTS DEMONSTRATE ONLY SUB-LINEAR RESULTS.

According to the Court's claim construction, the claims define linear to super-linear speedup based on the number of "available" processors. Dynetix concedes that Dr. Amin's results are sub-linear if based upon the number of available processors.

---

[3] In opposition Dynetix argues that Dr. Amin's opinion is relevant because a function that occurs *at the start of compilation* is equivalent to something that occurs *before* compilation. Opp'n at 11. This argument, however, is not relevant to literal infringement. It is addressed with Dr. Amin's doctrine of equivalents arguments, *infra*.

Dynetix's instead argues that the test results are relevant to Dr. Amin's opinion that this limitation is met under the doctrine of equivalents based on the number of cores "used." Opp'n at 14-15. But Dr. Amin's opinions do not even account for the number of cores "used." As Dynetix admits, Dr. Amin represented that the information in the left hand column was the "# of Cores," but did not include the "core" used by the master thread. Opp'n at 11-13. According to Dynetix, Dr. Amin *intentionally* failed to account for the core used by the master thread because VCS has a "peculiar" design in which "the master thread is not processing much work and thus is not bound to any CPU."[4] *Id.* at 13. Dynetix provides no basis in the '898 specification or claims to define speedup based upon cores used by slave threads and not the master thread. *See id.* Dr. Amin appears to be assuming that the maximum number of partitions is equal to the number of cores used. As demonstrated in Synopsys's opening motion, this is not the case. Syn. Mot. at 7-8. Dr. Amin's test results and any opinions based on those results should be excluded.

## IV. DR. AMIN'S OPINIONS ON "HIDDEN AUTOPARTITION" ARE PURE SPECULATION.

The Court should exercise its gatekeeping role to exclude Dr. Amin's opinion that a "Hidden Autopartitioning" function exists within VCS. Dkt. No. 435-1, Amin Rept., ¶¶ 119, 125-129, 131, 146, 153, 182. "Hidden Autopartition" is a phrase concocted by Dr. Amin, and Dr. Amin's opinions are based on speculation, not facts. Dynetix admits that there is no evidence to support Dr. Amin's conclusion that "Hidden Autopartition" even exists. It is undisputed, for example, that there is no document disclosing a "Hidden Autopartition" function in VCS. As

---

[4] In describing the "Peculiar Design" of DLP, Dynetix and Dr. Amin essentially admit that VCS does not infringe. Opp'n at 11-12. The Court's claim constructions clearly require that each thread is simulated on its own processor and Dynetix admits this does not occur for the Master thread. Moreover, Dynetix's description of DLP's "peculiar design"—assigning little work to the master thread—is the exact design that the specification of the '898 patent disclaims as "common practice for prior art simulators"

> Contrary to the invention, it is a common practice for the prior art simulators to allocate n+1 threads (one master and n slave threads) on an n-CPU system. The master threads main function is to manage the execution of the slave threads to perform simulation. In this invention however, the master thread will spend only a minimum amount of time managing the slave threads, and it shares an equal amount of workload with the n-1 slave threads to carry out the simulation.

Dkt. No. 435-3 ('898 Patent) at 17:65-18:6 (emphasis added)

Dynetix concedes, none of the Synopsys user manuals have ever described such a functionality (Opp'n at 15-16) and Dynetix cannot point to any other documents that mention one.

It is also undisputed that there is no evidence that anyone has ever executed such afunctionality. Dr. Amin could not force VCS to execute "Hidden Autopartitioning" despite months of testing.[5] Opp'n at 17; Dkt. No. 435-2, Amin Dep. Tr. at 210:11-17 ("I have not been able to successfully create a circuit that satisfies the conditions where that default behavior continues to be default. It always gets turned off.")

Dr. Amin has also not identified any source code that actually executes a "Hidden Autopartitioning" functionality. Syn. Mot. at 13; Opp'n at 15-16. As explained in Synopsys's opening motion, Dr. Amin claims that "Hidden Autopartitioning" is activated when a user enters the command "**-parallel**" without the Autopartitioning command ("**+autopart=N**") and certain "other conditions" are met. Dkt. No. 435-1, Amin Rept., ¶¶ 128, 146; Dkt. No. 463, Ex. B, Amin Dep. Tr. 211:9-15. But Dr. Amin has not identified any source code that calls the Autopartitioning function when the user has not entered the Autopartitioning command. The only source code that Dr. Amin identifies is located within the Autopartitioning function, and it simply provides an error message. Dkt. No. 435-1, Amin Rept., Ex. 24 (identifying code within the "generatePartition ConfigurationForDLP" function). There is no dispute that this code does not execute the functionality that Dr. Amin discusses. Syn. Mot. at 13; Opp'n at 15-16.

Dynetix's sole argument that Dr. Amin's opinion is admissible is that Dr. Amin based his opinion on his review of the source code, and that Dr. Amin is qualified to review source code. Syn. Mot. at 16. Dynetix's argument is akin to saying a foundationless damages opinion is admissible because a damages expert can read a balance sheet. There is no evidence that a "Hidden Autopartitioning" functionality exists. Dr. Amin's speculation will only confuse and mislead the jury.

---

[5] Dynetix blames Synopsys for Dr. Amin's inability to execute his alleged "Hidden Autopartitioning" functionality. Opp'n at 17. Dr. Amin had access to the source code for approximately six months, had access to the executables of VCS for almost approximately three months, and was offered access to Synopsys testing facility for its customers. Nothing prevented Dr. Amin from reviewing the code or testing the software.

## V. CONCLUSION

For the foregoing reasons, Synopsys requests that the Court strike the requested opinions from Dr. Amin's expert report on infringement of the '898 Patent and exclude such opinions from trial.

Dated: July 30, 2013

Respectfully submitted,

CHRIS R. OTTENWELLER
I. NEEL CHATTERJEE
BENJAMIN J. HOFILEÑA
JASON K. YU
ANDREW S. ONG
Orrick, Herrington & Sutcliffe LLP

By:  _____/s/ *Chris R. Ottenweller*_____
CHRIS R. OTTENWELLER
Attorneys for Defendant
SYNOPSYS, INC.