1  CHRIS R. OTTENWELLER (STATE BAR NO. 73649)
   cottenweller@orrick.com
2  I. NEEL CHATTERJEE (STATE BAR NO. 173985)
   nchatterjee@orrick.com
3  JASON K. YU (STATE BAR NO. 274215)
   jasonyu@orrick.com
4  ANDREW S. ONG (STATE BAR NO. 267889)
   aong@orrick.com
5  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
6  Menlo Park, California 94025
   Telephone:  +1-650-614-7400
7  Facsimile:   +1-650-614-7401

8  BENJAMIN J. HOFILEÑA (STATE BAR NO. 227117)
   bhofilena@orrick.com
9  ORRICK, HERRINGTON & SUTCLIFFE LLP
   777 South Figueroa Street Suite 3200
10 Los Angeles, California 90017
   Telephone:  +1-213-629-2020
11 Facsimile:   +1-213-612-2499

12 Attorneys for Defendant and Counterclaimant,
   SYNOPSYS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DYNETIX DESIGN SOLUTIONS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SYNOPSYS, INC., a Delaware corporation, and DOES 1-50,<br><br>Defendant. | Case No. 5:11-cv-05973-PSG<br><br>**DEFENDANT SYNOPSYS, INC.'S REPLY IN SUPPORT OF MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF PLAINTIFF'S DAMAGES EXPERT**<br><br>Date:  August 15, 2013<br>Time:  2:00 p.m.<br>Court:  5<br>Judge:  Honorable Paul S. Grewal |
| SYNOPSYS, INC., a Delaware corporation,<br><br>Counterclaim Plaintiff,<br><br>v.<br><br>DYNETIX DESIGN SOLUTIONS, INC., a California corporation,<br><br>Counterclaim Defendant. | |

## I. INTRODUCTION

The Federal Circuit has made it clear that district courts should not allow patentees to present damages cases to a jury that are arbitrary, contrary to law, and divorced from the facts of the case. The damages claim Dynetix has advanced, through the expert report of Dr. Black, is grossly inflated because Dr. Black used an inappropriate royalty rate of 14.25% and applied it to all VCS revenues even though the accused feature (DLP) is but one small part of VCS. Dynetix's damages case violates at least three lines of Federal Circuit authority.

First, it violates *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011), in which the Federal Circuit held that damages cases based on the 25% "rule of thumb" cannot be presented to the jury. Here, Dynetix takes an even more extreme and indefensible approach. Dr. Black bases his royalty rate on a 50% rule of thumb, which infects his entire royalty rate analysis. Dynetix concedes that the 50% starting point is not based on any facts of the case. *See*, *e.g.*, Dkt. No. 462 ("Opp'n") at 3:7-9 ("Dr. Black's starting point relies on nothing but the assumptions that the patent is valid and infringed, and that there is no other information").

Second, Dynetix's damages case violates *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012), and *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337 (Fed. Cir. 2009), in which the Federal Circuit held that, where the accused feature is part of a larger product, the patentee cannot recover damages based on the revenues of the larger product absent a showing that the accused feature drives consumer demand. Dynetix makes no such showing, yet Dr. Black applied his royalty rate to all VCS revenues, claiming damages for a vast amount of technology not accused of infringement. Dynetix's assertion that Dr. Black apportioned through adjustment to the royalty rate is baseless. By his own admission, Dr. Black performed no apportionment—to the royalty rate or the royalty base.

Third, Dynetix violates *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010), and other cases that hold that a royalty rate must be supported by comparable license agreements. Dr. Black has not cited any comparable license agreements to support his 14.25% rate. The Black Report refers to two irrelevant agreements. Even Dynetix now concedes that those agreements

did not support Dr. Black's 14.25% royalty rate. Thus, not only is the royalty rate illegal under *Uniloc*, but it is completely unsupported by any evidence.

The Black Report should be struck in its entirety and Dr. Black should be barred from testifying at trial. That leaves Dynetix without a damages case, but that is a consequence entirely of Dynetix's own making.

## II. ARGUMENT

### A. Dr. Black's 50% "Starting Point" Is Worse Than The 25% Rule Of Thumb.

Dynetix admits numerous times that Dr. Black did not consider a single fact in this case when he assumed that the starting point for the parties' hypothetical negotiation would be a 50% split of Synopsys's gross profit:

> *Dr. Black's starting point relies on nothing but the assumptions that the patent is valid and infringed, and that there is no other information.* Under these starting point assumptions, it is Dr. Black's considered opinion that an even split of the infringer's gross profit is mandated.
>
> \*   \*   \*
>
> Dr. Black's starting point relies on nothing but VCS's own gross margin, as well as his own experience and judgment on how to apportion profit between the licensee and licensor where there is no other information to slant the apportionment one way or another. *Neither can Dr. Black be faulted for not considering other facts of the case at the starting point. By definition, it is a neutral starting point where none of the facts underlying the 15 factors should be considered*. All the facts were thoroughly discussed in his subsequent analysis.

Opp'n at 3:7-10, 16:6-11 (emphasis added).

There could be no clearer violation of the Federal Circuit's prohibition in *Uniloc* against using a general rule of thumb. *See Uniloc*, 632 F.3d at 1315 (holding "as a matter of Federal Circuit law that the 25 percent rule of thumb is a fundamentally flawed tool for determining a baseline royalty rate in a hypothetical negotiation"). Much like the 25% rule rejected in *Uniloc*, Dr. Black's 50% rule "does not say anything about a particular hypothetical negotiation or reasonable royalty involving any particular technology, industry, or party." *Id.* at 1317. His opinion is even more arbitrary than the 25% rule; whereas the 25% rule was at least predicated on observations of prior (but irrelevant) commercial licenses, Dr. Black's 50% rule has no basis at all.

Dynetix argues that Dr. Black's 50% starting point is justifiable because it represents a "clean slate" or a "blank slate." *See*, *e.g.*, Opp'n at 15:26-28 ("Dr. Black started his analysis assuming a blank slate, without any information but only the assumptions that the patent is valid and that VCS has infringed it"). The assertion is specious. Starting a hypothetical negotiation with an assumption that the accused infringer will pay over 50% of its gross profits to the patent owner is anything but a neutral starting point; it severely penalizes Synopsys at the outset by taking one-half of its gross profit margin and paying it to Dynetix for a license to a patent alleged to cover a single optional feature that is rarely, if ever, used. *See* Dkt. No. 430 (Motion) at 3:25-4:19; Dkt. Nos. 431-9 to 431-12 (customers stating no use of DLP).

Regardless of what adjustments Dr. Black made to the 50% assumption, his starting point substantially skews the royalty rate and infects his entire opinion.[1] *See Uniloc*, 632 F.3d at 1317 ("[i]t is of no moment that the 25% rule of thumb is offered merely as a starting point to which the *Georgia-Pacific* factors are then applied to bring the rate up or down"). Dr. Black's fundamentally flawed approach goes directly to the soundness of his methodology, not the weight to be given to his opinions. Dr. Black's disregard of *Uniloc*, which he concededly was aware of, renders his entire report arbitrary, unreliable, and legally impermissible.

**B.    Dr. Black Performed No Apportionment Between The Allegedly Infringing Feature And The Many Non-Infringing Features.**

Dr. Black admitted that he performed no apportionment anywhere in his reasonable royalty analysis: "*I have not done an apportionment of contribution from VCS -- or of VCS sales from DLP and non-infringing components. That analysis is not in [my expert report].*" Dkt. No. 431-2 ("Black Dep.") at 63:20-23 (emphasis added). Despite Dr. Black's clear admission, Dynetix argues that his opinions are not unreliable because (1) "[u]nder the established law, Dr. Black does not need to conduct any apportionment within the smallest saleable unit to account for non-infringing components," and (2) Dr. Black allegedly apportioned in his royalty rate (as opposed to royalty base) analysis. Opp'n at 1:14-16, 10:20-22. Dynetix is wrong on both counts.

---

[1] Dr. Black actually compounds the flaw of his "starting point" by making three additional arbitrary 50% adjustments. *See* Dkt. No. 430 (Motion) at 3:10-23, 10:4-22.

Dr. Black was required to apportion regardless of his use of the smallest saleable unit. DLP is but one small feature of VCS. It is an optional feature that remains a "Limited Customer Availability" (LCA) feature, which means that less than five customers have ever said anything positive about DLP. The DLP feature can even be used without performing the allegedly infringing "Autopartition" functionality. Because of the many non-infringing features of VCS, Dr. Black was required either to apportion or to show that DLP drives consumer demand for VCS. He did neither. In fact, customer use of DLP was completely irrelevant to Dr. Black's opinion. *See* Black Dep. at 67:18-68:6 ("[t]he use or non use of DLP … is not a factor I separately considered"). By not apportioning, Dr. Black improperly compensates Dynetix for the non-infringing features of VCS. Dr. Black himself recognized that this is inappropriate. *Id.* at 185:20-186:10 ("[i]f that component, the ALP component, is not infringing, then you would not pay the hypothetical royalty on those non-infringing sales").

Dynetix's argument that Dr. Black was under no duty to apportion because VCS is the smallest saleable unit is erroneous. Recent Federal Circuit decisions have made clear that apportionment is required where the accused functionality is part of a larger product, even if the larger product represents the smallest saleable unit. For example, in *Lucent*, the Federal Circuit reversed the jury's damages award because the plaintiff's damages expert failed to apportion between the patented date-picker tool and the many non-infringing features of Microsoft's Outlook product. *See Lucent*, 580 F.3d at 1337-38. Outlook was the smallest saleable unit. The Federal Circuit made clear that, even in that situation, the plaintiff was required to apportion so that it would not be rewarded for the non-infringing features of Outlook. *Id.* at 1337 ("if plaintiff's patent only created a part of the profits, he is only entitled to recover that part of the net gains") (quoting *Westinghouse Elec. & Mfg. Co. v. Wagner Elec. & Mfg. Co.*, 225 U.S. 604, 614-15 (1912)); *see also id.* (courts must "determin[e] the correct (or at least approximately correct) value of the patented invention, when it is but one part or feature among many").[2]

---

[2] Dynetix attempts to distinguish *Lucent* on the grounds that the jury awarded a lump-sum royalty rather than a running royalty. *See* Opp'n at 10:9-12. This alleged distinction is irrelevant, as the Federal Circuit's message is the same: Dynetix cannot be compensated for non-infringing features that have nothing to do with the asserted patent.

The Federal Circuit in *Uniloc* similarly required apportionment between the patented feature (known as Product Activation) and non-patented features despite the fact that the plaintiff used the smallest saleable unit (Microsoft's Windows and Office software products) to determine the royalty base. *See Uniloc*, 632 F.3d at 1319-20. As in *Lucent*, the *Uniloc* court never suggested that the accused feature was sold in smaller units than Windows or Office. The plaintiff's failure to either apportion or establish that the patented feature drove consumer demand was legal error entitling the defendant to a new trial on damages. By not apportioning, the plaintiff "skew[ed] the damages horizon for the jury, regardless of the contribution of the patented component to this revenue." *Id.* at 1320. In other words, the jury's damages award gave the plaintiff more than was attributable to the patented invention. *See also AVM Techs., LLC v. Intel Corp.*, Civil Action No. 10-610-RGA, 2013 WL 126233, at *2-*3 (D. Del. Jan. 4, 2013) (holding apportionment of smallest saleable unit necessary "when the smallest saleable patent practicing unit is itself made up of multiple components").

Dynetix's assertion that Dr. Black apportioned through his royalty rate analysis is disingenuous. Not only did Dr. Black admit under oath that he did no apportionment at all, his report makes clear that apportionment did not affect his royalty rate analysis. *See* Black Dep. at 63:20-23.

Dr. Black's use of the entire VCS revenue was legally improper. This ground also requires the Court to strike the Black Report in its entirety and to bar Dr. Black from testifying. Any other outcome cannot be squared with Federal Circuit precedent.[3]

---

[3] Dynetix structured its damages case entirely around Dr. Black's flawed opinions. It has no other witnesses on damages. Terence Chan, Dynetix's proffered 30(b)(6) witness on damages, refused to testify on damages:

> Q. All right. So aside from Topics 23 through 28, are there any other topics in Chan Exhibit 21 [Synopsys's 30(b)(6) notice] that you do not feel comfortable in testifying about?
>
> A. Number 10, the damage. I think we have a damage expert to determine any damage we suffer. Number 10. I think I leave it to the damage expert.
>
> Q. You have no information that you can share with us today as a representative of the company as to whether Dynetix has suffered any damages from Synopsys's alleged infringement?

### C. Dr. Black Has No Support For His Royalty Rate.

Dr. Black has no support in prior license agreements for his exorbitant 14.25% royalty rate. In his report he suggested the rate was supported by the ViewLogic and Agilent agreements, but in deposition Dr. Black admitted that those agreements are not patent license agreements nor comparable in any way to the hypothetical negotiation. Dynetix's insistence in its opposition that these agreements "reflected royalty rates of 70% of gross sales and 75% of after-tax revenue" represents a gross mischaracterization of the agreements. *See* Opp'n at 23:4-7.

Dr. Black's opinions relating to the non-comparable ViewLogic and Agilent Agreements must be excluded under *ResQNet*. With the exclusion of these agreements, there is not a single agreement in the record of this case that supports Dr. Black's 14.25% royalty rate. Under such circumstances, his entire damages opinion must be stricken as unreliable and irrelevant. *See*, *e.g.*, *AVM Techs.*, 2013 WL 656745, at *2-*3 (excluding damages expert opinion that relied upon a single irrelevant settlement agreement).

### III. CONCLUSION

This case calls for the exercise of the Court's gatekeeper responsibilities. Allowing Dr. Black to present legally impermissible theories and opinions to the jury would be highly prejudicial to Synopsys and infect the legality of the entire proceedings. For the reasons set forth in Synopsys's original moving papers and above, the Court should grant Synopsys's motion to exclude the opinions and testimony of Dynetix's damages expert in their entirety.

---

[A.] I think I prefer defer to my damage expert.

Reply Declaration of Andrew S. Ong in Support of Defendant Synosys, Inc.'s Motion to Exclude Opinions and Testimony of Plaintiff's Damages Expert, Ex. A (Apr. 10, 2013 Chan Dep.) at 21:17-22:5. Synopsys intends to file a motion *in limine* barring Mr. Chan from testifying on damages at trial. *See AVM Techs., LLC v. Intel Corp.*, Civil Action No. 10-610-RGA, 2013 WL 656745, at *6-*7 (D. Del. Feb. 21, 2013) (excluding lay testimony on damages where, during deposition, witness testified he had "no idea" about damages; vacating trial date where plaintiff had no expert or lay witness testimony to support its damages theories).

| | | |
|---|---|---|
| 1 | Dated: July 30, 2013 | Respectfully submitted, |
| 2 | | CHRIS R. OTTENWELLER |
| | | I. NEEL CHATTERJEE |
| 3 | | BENJAMIN J. HOFILEÑA |
| | | JASON K. YU |
| 4 | | ANDREW S. ONG |
| | | Orrick, Herrington & Sutcliffe LLP |

By: _/s/ Chris R. Ottenweller_
CHRIS R. OTTENWELLER
Attorneys for Defendant
SYNOPSYS, INC.

OHSUSA:754157851.7