1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

DYNETIX DESIGN SOLUTIONS, INC., a
California corporation,

          Plaintiff/Counter-defendant,

      v.

SYNOPSYS, INC., a Delaware corporation,

          Defendant/Counter-claimant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: C 11-5973 PSG

**ORDER ON MOTIONS IN LIMINE**

**(Re: Docket Nos. 430, 441, 453, 484, 485,
486, 487, 492, 493, 494, 496, 498, 499,
500, 501, 502)**

      In advance of the trial set to begin on September 3, 2013, the parties have filed a grand total
of 26 motions in limine, three of which Synopsys has styled as so-called "Daubert" motions. The
law applicable to such motions is well-understood, and so the court will only note the following.

      Fed. R. Evid. 401 provides that evidence is relevant if "it has any tendency to make a fact
more or less probable," or if it is of any consequence in resolving the action. Fed. R. Evid. 403
gives the court discretion to exclude relevant evidence "if its probative value is substantially
outweighed by a danger of… unfair prejudice, confusing the issues, misleading the jury, undue
delay, wasting time, or needlessly presenting cumulative evidence."

Case No.: 12-3541 PSG
ORDER

Fed. R. Evid. 702 governs testimony by a qualified expert, who may testify only if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 703 permits expert testimony only if it is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject."

With 26 separate motions to address, the court unfortunately cannot indulge in the luxury of a lengthy exegesis of the background of each dispute and the full scope of its reasoning. What are required are timely decisions, and little beyond that. To that end, the court provides its decisions below, with just one exception – Synopsys' challenge to Dynetix's damages expert testimony. The exceptional motion will be addressed by separate order.

**A.     Synopsys' Motions**

IT IS HEREBY ORDERED that Synopsys' motion to exclude any doctrine of equivalents ("DOE") theory is GRANTED.

Synopsys takes issue with Dynetix's DOE theory on three grounds: (1) Dynetix did not adequately disclose its DOE theory in its infringement contentions, (2) Dynetix's DOE theory would vitiate the claim limitations, and (3) Dynetix's arguments during the '898 patent's prosecution history bars its DOE theories.

The court focuses on the sufficiency of Dynetix's infringement contentions. Judge Whyte, as is typical, has put it best. "The Patent Local Rules require a limitation-by-limitation analysis, not a boilerplate reservation."[1] The doctrine of equivalents exists to prevent "a fraud on the

---

[1] *Rambus Inc. v. Hynix Semiconductor Inc.,* Case No. C-05-00334 RMW, 2008 WL 5411564, at *3 (N.D. Cal. Dec. 29, 2008) (granting summary judgment on the plaintiff's equivalence theories on

Case No.: 12-3541 PSG
ORDER

patent," not to "give a patentee a second shot at proving infringement" that cannot be achieved through a literal infringements theory.[2]  Dynetix's infringement contentions consistently provide a boilerplate preamble that "VCS practices this element literally or equivalently" before going on to explain a single way in which VCS infringes.[3]  Dynetix therefore does not provide a specific analysis of how VCS satisfies the doctrine of equivalents, which applies only if the element in the accused device performs substantially the same function, in substantially the same way, to obtain substantially the same result as the element claimed in the patent.[4]  Even though the magic "function, way, result" words are not specifically required, a party looking to rely on equivalents still has to describe how these requirements are met.  Boilerplate is not enough.  By failing to give Synopsys adequate notice of these theories during fact discovery, Dynetix severely prejudiced Synopsys' ability to refute any DOE theories.[5]  In sum, while equivalents theories can serve as "Plan B" to literal infringement theories, if our local rules are to have any teeth, they must be adequately disclosed and supplemented along the way, should new evidence arise in discovery.[6]

   Because the court has found that Dynetix is limited to literal infringement theories based on its inadequate disclosures, the court does not reach Synopsys' alternative reasons for striking Dynetix's DOE theories.

---

the basis that they were disclosed only in a boilerplate manner in the plaintiff's infringement contentions); *see also* Fed. R. Civ. P. 37(c).

[2] *Id.*

[3] *See, e.g.,* Docket No. 508-1 at 1(a).

[4] *See Abbott Laboratories v. Sandoz, Inc.*, 566 F.3d 1282, 1296-97 (Fed. Cir. 2009).

[5] Dynetix's expert report, served in May 2013, also only conclusorily discloses Dynetix's DOE theories.  *See, e.g.,* Docket No. 461 ¶ 202 ("Therefore, since VCS does show linear to super-linear scalability between 2 and 9 CPUs at least in some cases, VCS meets the element of linear or super-linear scalability literally or at least under the doctrine of equivalents").  *See also id.* ¶¶ 78, 85, 100-102, 135, 161, 187.

[6] *See* Pat. L.R. 3-1 and 3-6.

Case No.: 12-3541 PSG
ORDER

IT IS HEREBY ORDERED that Synopsys' motion to strike Dynetix's (1) parallel compile theories and (2) "Hidden Autopartitioning" theories is GRANTED.

Synopsys argues these theories were not adequately disclosed until May 3, 2013, when Dynetix served Dr. Amin's ("Amin") expert report.  Dynetix's infringement contentions identify DLP, ALP, and VCS Cloud as infringing instrumentalities within VCS, but never mention parallel compile.  Amin's expert report makes clear that parallel compile is a distinct instrumentality: "VCS Multicore… includes the Application Level Parallelism ('ALP') and Design-Level Parallelism ('DLP')… There are also other features of VCS that utilize parallel simulation, including parallel compile and partition compile and parallel merge."[7]  By Amin's own admission, then, parallel compile is a separate feature that cannot at this stage be added to the case.

The same applies to Hidden Autopartitioning.  Again, nothing in Dynetix's infringement contentions or discovery responses refer to Hidden Autopartitioning and Synopsys did not know of the theory until Amin served his report.  Synopsys' expert then was left with only two weeks to review the code to see if there was any evidence supporting Amin's theory and could find none.[8]  The prejudice suffered by Synopsys mandates that this theory be excluded.

IT IS HEREBY ORDERED that Synopsys' motion to preclude Dynetix from asserting infringement of claim 45 is GRANTED.

Synopsys contends that claim 45 consists solely of means-plus-function limitations, which requires "a finding that the accused device perform[s] the specified functions recited in the means-plus-function limitations" with an identified structure the same or equivalent to the one described in the specification.[9]  Dynetix never asked the court to construe at least three means-plus function terms in claim 45 during either of the court's claim construction hearings, but now on the eve of

---

[7] Docket No. 461 ¶ 105.

[8] *See* Docket No. 434.

[9] *Dawn Equipment Co. v. Kentucky Farms, Inc.*, 140 F.3d 1009, 1020 (Fed. Cir. 1998).

Case No.: 12-3541 PSG
ORDER

trial requests that the court do so.  Although the court has an obligation to construe any terms in dispute,[10] the court is not at the whims of the party as to when it has to do so.  Because Dynetix failed to diligently develop its case, the court dismisses the claim.

Synopsys' motion to preclude induced infringement theories is GRANTED.

Synopsys challenges that Dynetix has not disclosed any evidence supporting an induced infringement theory.  In response, Dynetix has agreed not to pursue induced infringement claims.

Synopsys' motion to establish a procedure determining the objective prong for willfulness before the jury is empaneled is DENIED.

Synopsys suggests that Dynetix should have to prove the objective prong of willfulness before the jury is empaneled and before it can present any evidence on either subjective or objective willfulness.  This flies in the face of both the case law and common sense.  The *Bard* court noted that although the ultimate question of objective willfulness should be made by the judge, it is not error to allow the jury to determine the underlying facts to inform the court's objective willfulness finding.[11]  The parties may present evidence on both prongs of willfulness and the court will structure an appropriate set of jury instructions and verdict form.

Synopsys' motion to limit Dynetix to damages after the filing date of the complaint is GRANTED.

Both Synopsys and Dynetix argue at length as to whose burden it is to prove that Dynetix properly marked any patented articles pursuant to 35 U.S.C. § 287.  Is it a component of damages, to be proven by the patentee?  Or is it an affirmative defense to argue that the patentee failed to

---

[10] *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,* 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it.").

[11] *See Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*, 682 F.3d 1003, 1008 (Fed. Cir. 2012) *cert. denied,* 133 S. Ct. 932 (2013) ("In considering the objective prong of *Seagate,* the judge may when the defense is a question of fact or a mixed question of law and fact allow the jury to determine the underlying facts relevant to the defense").

Case No.: 12-3541 PSG
ORDER

United States District Court
For the Northern District of California

mark because it did not instruct a party to a settlement to do so?  While the question of burden is interesting, and ultimately important, the court finds more pertinent to this case the rule that an admission by a 30(b)(6) witness is binding on the principal.  Dynetix's 30(b)(6) witness Terence Chan ("Chan") admitted in deposition that MPSim practices the '898 claimed invention, and it is further undisputed that Axiom did not mark MPSim.  Under such circumstances, Chan's admission is binding and Dynetix cannot argue that it marked all patented articles and is entitled to pre-filing damages, no matter who bears the burden at issue.

IT IS HEREBY ORDERED that Synopsys' motion to exclude the Tera Scale Summit is DENIED.

The Tera Scale Summit presentation is hearsay because it is presented for the truth of the matter stated.[12]  Dynetix, however, responds that it is a party admission because it was made by a Synopsys employee in the scope of his employment.[13]  The court agrees.

IT IS HEREBY ORDERED that Synopsys' motion to exclude terminology not found in the evidence is DENIED.

Synopsys requests that Amin refrain from using his own shorthand terminology for both source code and claim limitations.  Amin can use the terminology for ease of reference so long as he bases his testimony on evidence found in the record.  If he fails to do so, Synopsys is free to cross-examine him and point out that his characterizations of the evidence and the claim limitations are inaccurate.

Synopsys' motion to preclude Dynetix from stating that Synopsys withheld or concealed evidence is GRANTED.

---

[12] *See* Fed. R. Evid. 801(c).

[13] *See id.* section (d)(2)(D).

Case No.: 12-3541 PSG
ORDER

Synopsys anticipates that at trial, Dynetix may accuse Synopsys of discovery misconduct. Dynetix all but confirms Synopsys' suspicions in its opposition by stating that while Dynetix will not say that Synopsys engaged in bad faith litigation, "that does not mean that Dynetix will not present evidence of document withholding, destruction, or concealment to prove willful infringement."[14]  While Dynetix is free to argue that Synopsys willfully infringed, it cannot use the nonproduction of documents during this litigation to suggest that Synopsys wrongfully destroyed or withheld documents during litigation, especially when no motion for sanctions has been granted. As the court has not imposed any sanctions against Synopsys for discovery abuse, such a statement would not only be baseless but highly prejudicial.[15]

Synopsys' motion to preclude Chan from opining on the amount of damages is GRANTED-IN-PART.

Synopsys argues Chan should not be allowed to opine on the damages calculation based on Chan declining to speak to the reasonable royalty calculation during his deposition.  Dynetix disclaims any intent to have Chan testify as to the reasonable royalty calculation, but may ask Chan to testify as to factual issues underlying the reasonable royalty calculation.  So long as Chan has a proper foundation to testify as to those facts, he may do so.

Synopsys' motion to limit Dynetix to three claims is DENIED.

Synopsys requests that the court limit Dynetix to its three independent claims 1, 36, and 45. While Dynetix originally planned to bring 12 claims, at the pretrial conference it represented to the court that it had trimmed its case to claims 1, 2, 3, 36, 39, 46, and 48 only.  In the interest of effective case management, the court may limit the plaintiff to a select number of claims so long as

---

[14] Docket No. 522 at 39.

[15] See Fed. R. Evid. 402, 403.

Case No.: 12-3541 PSG
ORDER

United States District Court
For the Northern District of California

the limitation procedure does not unduly risk depriving the plaintiff of its due process rights.[16]  For

example, the court may limit claims that are duplicative of each other and share the same issues of

infringement or invalidity.[17]  But no particular restriction is required.  To the extent that it is

willing to put the jury to the task, Dynetix may present its case on all eight claims it has identified.

IT IS HEREBY ORDERED that Synopsys' motion to strike portions of Amin's

infringement expert report is GRANTED.

Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharms, Inc.* require the district court to act

as a "gatekeeper" to ensure that any scientific testimony based on technical or other specialized

knowledge is "not only relevant, but reliable."[18]

Synopsys takes issue with several aspects of Amin's report.  First, Synopsys argues that

Amin's testimony applying construction of claim terms different from those issued by the court.[19]

Dynetix agrees that Amin presents his opinion based both on the court's "tentative" claim

construction as well as Amin's own construction of the claims at issue.  If the court was not

explicit about the binding nature of its constructions before, it certainly is now.  Any expert

testimony must adhere to the court's claim constructions and must not apply alternative claim

constructions.[20]

Second, Synopsys contends that Amin did not calculate his test results based on available

processors, as required by the court's claim construction of "to achieve linear to super-linear

scalable performance speedup/simulation":

---

[16] *See In re Katz Interactive Call Processing Patent Litig.,* 639 F.3d 1303, 1311 (Fed. Cir. 2011).

[17] *See id.*

[18] *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993); *See also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

[19] *See* Docket No. 559.

[20] *Cf. Hochstein v. Microsoft Corp.*, Case No. 04-73071, 2009 WL 2022815, at *1 (E.D. Mich.) (excluding expert testimony conflicting with the court's claim construction).

Case No.: 12-3541 PSG
ORDER

United States District Court
For the Northern District of California

> The terms "linear" and "super-linear" describe the speedup that a parallel simulation will achieve when performing hardware containing one or more processing units.
>
> A simulation is "linear" if the speedup that is achieved is equal to the number of *available* processing units. For example, a simulation that runs two times as fast on hardware containing two processing units is "linear."
>
> Similarly, if the simulation runs four times as fast on four processing units, it is again "linear."
>
> A simulation that has a speedup greater than the number of processing units is "super-linear." For example, if a process executed on two processing units runes three times as fast as the same simulation on one processing unit, it is "super-linear."
>
> "Scalable performance" means there is a consistent increase in performance for each *added* processing unit.[21]

The court's claim construction requires that there is a consistent increase in performance for each "added," or "available," processing unit. Accordingly, to the extent that Amin's test results are based on the number of participating processing units, it must be excluded.

Third, Synopsys argues that Amin should not be allowed to present evidence on the so-called Hidden Autopartitioning feature because Amin has not identified any code corresponding to that feature. The court has already ruled that Dynetix did not adequately disclose the Hidden Autopartitioning theory, and so it must be excluded. Accordingly, Amin may not testify as to Hidden Autopartitioning because it is not allowed in the case.

Aside from these particular flaws, Amin may testify as to whether the infringing instrumentalities literally infringe the asserted claims. Any of the additional issues raised by Synopsys can be challenged with vigorous cross-examination.

IT IS HEREBY ORDERED that Synopsys' motion to strike Amin's validity expert report is DENIED.

Synopsys first asserts that Amin's validity report is legally irrelevant because it runs contrary to Federal Circuit caselaw on enablement. The law on enablement requires that a patent

---

[21] Docket No. 559 (emphasis added).

Case No.: 12-3541 PSG
ORDER

specification enable an ordinarily skilled artisan to "make and use the same."[22]   Synopsys argues

that Dynetix cannot prove enablement of the '898 patent because in the twelve tests cited by the

patent, linear to super-linear performance was shown as to only four circuit designs.

This is little more than an attempt to bring a summary judgment motion that the court

already explicitly prohibited.[23]   Synopsys cannot "convert a *Daubert* motion into an ersatz motion

for summary judgment" where the legal standards are "not so well-defined" or can reasonably be

argued.[24]   Amin's opinion on enablement provides at least reasonable argument as to enablement.

This is because nothing in the patent claims requires that the invention achieve linear to superlinear

scalable performance as to all circuit designs.   In any event, this argument can be further explored

at trial.

Synopsys next attacks Amin's report based on his failure to discuss the level of one

ordinarily skilled in the art.   But Amin did discuss the ordinarily skilled artisan, describing her as

"somebody who has worked on parallel algorithms, preferably commercial code base."   Synopsys

also takes issue with the fact that in deposition, Amin discusses Dr. Paulsen ("Paulsen") as a skilled

artisan "in the present" rather than in 1999, the time of the invention.   But as Dynetix points out,

Paulsen may be a skilled artisan in both 1999 as well as the present.   Further, this discussion does

not necessarily mean that Amin considered the wrong standard in his expert report.   Even if

Synopsys is correct that Amin applied the standard of a present-day skilled artisan, such an artisan

would know more than a 1999 skilled artisan, and so the court fails to see how Synopsys could

---

[22] 35 U.S.C. § 112(a).

[23] *See* Docket No. 428 (denying Synopsys leave to file fourth motion for summary judgment on the issue of enablement).

[24] *In re Se. Milk Antitrust Litig.*, Case No. 2:08-MD-1000, 2010 WL 5102974, at *2 (E.D. Tenn. Dec. 8, 2010) *report and recommendation adopted,* Case No. 2:08-MD-1000, 2011 WL 2693541 (E.D. Tenn. July 11, 2011).

Case No.: 12-3541 PSG
ORDER

complain that Amin applied a stricter standard in its report than he was required to.  In any event, the jury can sort this out.

**B.     Dynetix's Motions**

IT IS HEREBY ORDERED that Dynetix's motion to strike Mr. Malackowski's ("Malackowski") expert damages report is GRANTED-IN-PART.

The law regarding the date of the so-called "hypothetical negotiation" is well-understood. There is a date of the negotiation, not some range, and certainly not a range extending over several years.[25]  Is this an artificial construct?  Yes, but so is the entire hypothetical negotiation, which by its very nature involves some conjecture.  This court is not at liberty to dispense with long-standing case law from the Federal Circuit making clear that there is a discrete point in time to consider, and that point in time is the date the jury decides infringement first began.  Malacowski may not confuse the jury as to this law by suggesting anything to the contrary.

Nor may Malacowski testify about the semiconductor industry generally or its patents.  He offers no expertise on these subjects.

Finally, Malacowski may not argue the law of patent damages, in refuting any testimony from Dr. Black or anyone else.  He is not a lawyer, and even if he were, the responsibility for explaining the law lies with the court.  At most, Malacowski may testify to the understanding of the law he was provided to allow him to conduct his analysis.

In all other respects, Dynetix's motion regarding Malacowski is denied.

IT IS HEREBY ORDERED that Dynetix's motion to exclude Dr. Myer's ("Myer") expert testimony regarding parallel processing is DENIED.

---

[25] *See Integra Lifesciences I, LTD v. Merck KGaA*, 331 F.3d 860, 870 (Fed. Cir. 2003) ("The first step in a reasonable royalty calculation is to ascertain the date on which the hypothetical negotiation in advance of infringement would have occurred. The correct determination of this date is essential for properly assessing damages.").

Case No.: 12-3541 PSG
ORDER

United States District Court
For the Northern District of California

With multiple degrees in electrical engineering and substantial experience specifically in chip simulation, Dr. Myer's technical qualifications to speak to the hardware and software issues of this case are well-beyond the point of serious debate. If Dynetix wishes to highlight his relative inexperience in parallel processing or any other technical area, it may do so by cross-examination.

IT IS HEREBY ORDERED that Dynetix's motion to exclude Paulsen's expert opinion regarding Speedwave MT is DENIED.

Corroboration of reduction to practice in patent cases is assessed under a rule of reason analysis,[26] and Dynetix fails to identify any binding precedent requiring corroboration of the practice of each individual limitation by documentation alone.

IT IS HEREBY ORDERED that Dynetix's motion to exclude speedwave MT as prior art and the late-produced webpage is DENIED.

Dynetix has not shown that Synopsys withheld or delay production of any documents or evidence relating to Speedwave MT in its possession, custody or control.

IT IS HEREBY ORDERED that Dynetix's motion to exclude Mr. Dasgupta's ("Dasgupta") opinion on the meaning of source code is DENIED.

Dasgupta was in charge of developing and delivering the accused DLP feature. He worked directly on its design and delivery. The fact that he did not write the code itself does not disqualify him as a percipient witness on how the code works.[27] So long as he refrains from any opinions on how the accused product compares to the claimed invention and other matters truly requiring expertise, Mr. Dasgupta's testimony will not unduly prejudice Dynetix.

IT IS HEREBY ORDERED that Dynetix's motion to exclude test data on customer designs is GRANTED.

---

[26] *See Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1374 (Fed. Cir. 2010).

[27] *Cf. Fresnius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, Case No. C 03-1431 SBA, 2006 WL 1330002, at *1-3 (N.D. Cal. May 15, 2006) (permitting "lead engineer" to provide lay testimony about product at issue).

Case No.: 12-3541 PSG
ORDER

Synopysis successfully persuaded this court not to require production of its customer designs used to test its products.  Having prevailed earlier, it may not now take advantage of the court's ruling and offer such designs at trial.  It would be unfair to allow Synopsys offer data on the tests of those designs where its claims of undue burden precluded Dynetix from probing or otherwise evaluating such results for itself.

IT IS HEREBY ORDERED that Dynetix's motion to exclude Dynetix's license to University of Central Florida is GRANTED.

*ResQNet*[28] resolved any doubt:  licenses need to be comparable if they are used in valuing the contribution of an invention.  An academic software license structured essentially as a college donation is not comparable.

IT IS HEREBY ORDERED that Dynetix's motion to exclude pre-2006 VCS revenue data is GRANTED-IN-PART.

Synopsys refused to disclose pre-2006 financial information, and so in equity Synopsys cannot now rely on such evidence.[29]  There is no basis, however, for Dynetix's assertion that Synopsys should be precluded from arguing that the phenomenal growth of VCS was a continuation of earlier growth, not a result of the inclusion of DLP, based on other information that was otherwise available to Dynetix.

IT IS HEREBY ORDERED that Dynetix's motion to exclude the Axiom settlement agreement completely is DENIED.

The Axiom settlement agreement amount is relevant to the issue of damages.  Fed. R. Evid. 408's purpose is to protect statements made during compromise negotiations when offered to prove infringement in a later suit.  Under *ResQNet,* there is no basis to prevent Synopsys from using a comparable license like the Axiom settlement agreement amount to assess damages.

---

[28] *See ResQNet.com, Inc. v. Lansa, Inc.,* 594 F.3d 860 (Fed. Cir. 2010).

[29] *See* Fed. R. Civ. P. 37(c)(1).

13

Case No.: 12-3541 PSG
ORDER

IT IS HEREBY ORDERED that Dynetix's motion on marking is DENIED.

The court has already provided its reasoning on this issue above regarding Synopsys' identical motion in limine on the issue of marking.

IT IS HEREBY ORDERED that Dynetix's motion to exclude witnesses not disclosed is DENIED.

Even though these witnesses were not disclosed in Synopsys' initial disclosures, they were disclosed before the end of fact discovery in Synopsys' supplemental initial disclosures, served on April 19, 2013.[30]  Dynetix had ample opportunity to ask to depose these witnesses, but did not do so.  To alleviate any possibility of prejudice, Synopsys has stated it is not averse to making the witnesses available for deposition prior to trial.  Dynetix may depose any of the four witnesses for up to four hours each before August 30, 2013.

IT IS HEREBY ORDERED that Dynetix's motion to exclude any demonstrative exhibits exchanged later than 10:00 am on August 29, 2013 is DENIED.

Instead, the court finds reasonable a proposed schedule requiring opening statement exhibits be disclosed at 5:00 pm on September 2, 2013, and all other demonstratives to be disclosed 12 hours before their expected use.

IT IS SO ORDERED.

Dated:  August 22, 2013

_Paul S. Grewal_

PAUL S. GREWAL
United States Magistrate Judge

_____
[30] Fed. R. Civ. P. 26(e) (requiring parties to serve supplemental disclosures).

14

Case No.: 12-3541 PSG
ORDER